Electrical Contractors' Association of Chicago, Appellant, v. A. S. Schulman Electric Company, Appellee.

Gen. No. 42,423.

Opinion filed October 11, 1944. Rehearing denied October 27, 1944. Released for publication October 27, 1944.

CASSELS, POTTER & BENTLEY, of Chicago, for appellant; EDWIN H. CASSELS, WILLIAM S. WARFIELD, III and GEORGE C. BUNGE, all of Chicago, of counsel.

MILLER, GORHAM, WESCOTT & ADAMS and MILTON M. ADELMAN, all of Chicago, for appellee; FREDERIC O. MASON, of Chicago, of counsel.

MR. JUSTICE LUPE delivered the opinion of the court.

This action is one at law instituted by plaintiff Electrical Contractors' Association of the City of Chicago, a corporation not for profit, to recover dues claimed to be owed by A. S. Schulman Electric Company under plaintiff's by-laws. Defendant, by counterclaim, sought recovery from plaintiff of sums paid to the plaintiff on account of such dues under an alleged mistake of fact. At the conclusion of a jury trial the court directed verdicts in favor of the defendant as to plaintiff's claim and in favor of plaintiff as to defendant's claim, and entered judgments thereon. Plaintiff appealed from the judgment denying it recovery, and defendant filed notice of cross-appeal from the judgment denying recovery under its counterclaim.

The plaintiff, Electrical Contractors' Association of City of Chicago, is a corporation not for profit organized under the laws of this State. Its charter sets forth that the object for which it was formed was "to promote the interests of its members and create a more friendly feeling between legitimate electrical contractors." On June 11, 1919, A. S. Schulman made a written application to plaintiff for membership; this application was accepted by plaintiff, and he became a member of plaintiff association.

On February 25, 1926, the defendant, A. S. Schulman Electric Company, a corporation organized under the laws of this State, wrote plaintiff a letter on the letterhead of A. S. Schulman Electric Company requesting plaintiff Association to change upon its records the name of A. S. Schulman to A. S. Schulman Electric Company. When plaintiff's secretary received this letter he changed the name "A. S. Schulman" wherever it appeared in plaintiff's records to read "A. S. Schulman Electric Company." The records of plaintiff so changed consisted of the roll-call books, used for calling the roll of meetings of plaintiff Association, and containing the official list of members, and the ledger containing the account of plaintiff Association with each of its members; and plaintiff's secretary also destroyed the addressograph plate bearing the name of "A. S. Schulman" and had a new plate made with the name "A. S. Schulman Electric Company" at the same address as had theretofore been used as the address for A. S. Schulman.

After this new plate was made in 1926 and up to the time suit was instituted all communications of plaintiff Association to its members were sent to the defendant by this substituted plate. After 1926 there were from 10 to 20 meetings per year of plaintiff's members, and either A. S. Schulman, the president of defendant, or Harvey T. Nack, its vice president and general manager, attended 90 per cent of these meetings.

Plaintiff's by-laws during the period from 1926 to 1939, when suit was instituted by plaintiff, provided that any person, firm or corporation shall be eligible to membership who is so declared by the executive committee; that a candidate for membership shall make application in writing on blanks provided by the plaintiff Association, accompanied by cash or certified check in the sum of $25 as an initiation fee; that each application shall bear the indorsement of two members in good standing; that each application shall be re-

ferred to the executive committee and by them reported to the next regular meeting of the Association; that if the report of said executive committee is favorable to an applicant, the applicant shall be declared elected to membership if he received a majority vote of the members at such meetings; and if the executive committee report adversely on an applicant, then his application shall be declared rejected, and shall not be again considered for a period of six months from the date of rejection.

Article 8 of the by-laws of plaintiff provided that the dues of regular members should be an amount equal to 4/10ths of 1 per cent of all construction and merchandising business; that all dues should be computed on a basis of monthly billing and should be due and payable each month; and that all members were obligated to pay all such dues from date of election to membership until resignation or expulsion by the executive committee.

It was stipulated upon the trial of this cause that from February 25, 1926 to October 3, 1939, when plaintiff filed its suit, the defendant had from time to time made reports to the plaintiff of business done by it and paid to plaintiff the sum of $8,607.82. The amount of merchandising and construction business done by the defendant in the 10-year period from October 3, 1929 to the date of the institution of this suit was $2,445,235.53. One of the jobs performed was on the Chicago post office under a subcontract with John Griffith & Sons Company, the general contractors; another of the jobs performed was a direct contract with the Sanitary District of Chicago, river control work; and all of the other jobs done were private as distinguished from public work.

The aggregate amount due to the plaintiff for such 10-year period at the rate of 4/10ths of 1 per cent set up in the by-laws of plaintiff was $9,780.94; plaintiff had received dues from the defendant during the 10-

year period amounting to $4,081.41, which left a balance due to plaintiff, for dues claimed to be owed to plaintiff for the 10-year period, of $5,699.53. For this sum plaintiff instituted suit, and the defendant filed its counterclaim alleging that defendant had paid the sum of $8,607.82 as dues under the belief and mistake of fact that it was a member of plaintiff's organization; that since such payments had been made to plaintiff, and after the commencement of plaintiff's action, it first learned that it was not a member of plaintiff Association. The trial court denied the counterclaim because it was of the opinion that the defendant had received value for the money it had paid. The trial court also denied the claim of plaintiff on the ground that plaintiff's by-laws providing that the sliding scale method of fixing dues in proportion to volume of business done by individual members was contrary to public policy and, therefore, void. The trial court thereupon instructed the jury to find for the defendant upon the claim of plaintiff and for the plaintiff upon the counterclaim of defendant.

The first question for determination is whether the defendant ever became an actual member of plaintiff Association. On this question the defendant urges (1) that the conditions set up in plaintiff's by-laws for admission to membership have never been complied with, by either plaintiff or defendant; and (2) that the defendant, as a corporation, could not legally become a member of a voluntary association incorporated under the laws of this State as a nonprofit corporation.

The evidence herein sufficiently shows that the defendant sent in a letter dated February 25, 1926, requesting the plaintiff to change the name of A. S. Schulman on its records to A. S. Schulman Electric Company. After that request of the defendant had been complied with, the plaintiff treated the defendant as a member, and the defendant acted as a member of plaintiff Association. The defendant's of-

ficers attended 90 per cent of the meetings of plaintiff Association; made numerous reports to plaintiff of the amount of business done by it; paid dues under the by-laws of plaintiff, amounting to $8,607.82; and the defendant, through its officers, participated in the activities of plaintiff Association.

Under these facts, the contention of the defendant that it never became a member of plaintiff Association cannot be sustained. The fact that the letter of February 25, 1926, requesting that plaintiff change the name of A. S. Schulman to A. S. Schulman Electric Co. was not in the form of a membership application as prescribed by the by-laws of plaintiff cannot avail the defendant. Despite the apparent informality of the application of the defendant to become a member of plaintiff Association, the actions of defendant in acting as a member for a long period of time estop the defendant from raising such claim. The defendant had been accepted and recognized as a member of plaintiff Association for 13 years prior to the institution of suit herein, and cannot now urge the claimed informality in the acceptance of its application to become a member of plaintiff Association.

Defendant next contends that it, as an Illinois corporation, could not legally become a member of plaintiff Association, an Illinois corporation not for profit. It is urged that the statute relating to corporations and associations not for pecuniary profit (par. 158 *et seq.*, ch. 32, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 32.251 *et seq.*]), under which plaintiff was organized, did not specifically authorize defendant, a business corporation, to become a member of plaintiff Association.

The act under which plaintiff was incorporated as a nonprofit association does not expressly prohibit an association organized under its provisions from accepting or admitting a corporation as a member. Defendant claims that the act provides that three or more *persons,* citizens of the United States, who desire to as-

sociate themselves, may create a nonprofit corporation; that a corporation is not a citizen of any State or community and is not a person; and, therefore, that the act by such language excluded corporations from becoming members of a nonprofit corporation.

It is only by reading a restrictive limitation into the act prohibiting corporations from becoming members of a trade association that defendant's contention can be sustained. An analysis of the wording of the act leads us to the conclusion that the legislature did not intend by the language employed in the act to prohibit corporations from becoming members of an incorporated nonprofit trade association.

There would seem to be no inherent or basic reason in the public policy of this State that a business corporation engaged in a certain trade could not become a member of a trade association incorporated as a nonprofit corporation under the laws of this State. A large proportion of the business of this State has been for a number of years conducted by corporations, and to deprive them of the benefits and advantages of membership in a trade organization would seem without reason. The membership of a corporation in a trade association would seem just as appropriate as the membership of an individual; the corporation as a member would receive no better or worse treatment than an individual; and no illegal act could be based upon the mere membership of a corporation in a trade association. If the trade association benefits and privileges were necessary and convenient for individuals, such benefits and privileges would be necessary and convenient to a corporation engaged in the same line of business as the individual.

Defendant cites no authority which adopts the construction for which it contends. In the case of *American Live Stock Commission Co. v. Chicago Live Stock Exchange,* 143 Ill. 210, while the point is not expressly passed on, the court held that a nonprofit corporation

had the undoubted right to adopt a by-law restricting membership in the association to natural persons, and that such by-law prevented a corporation from becoming a member. The court thus inferentially held that a corporation might become a member of the association except for the fact that the by-law of the association prevented the corporation from becoming a member.

Defendant further argues that the amendment of 1937 to par. 158 expressly designating "commercial, industrial, or trade associations," as eligible for incorporation under the not-for-profit act shows that the legislature had in mind the absence of the power under the act prior to 1937, and used appropriate language to confer it where it was previously lacking. However, this amendment was construed to restrict rather than to enlarge the classes of organizations which might incorporate under the act. (*People ex rel. Padula v. Hughes*, 296 Ill. App. 587.)

We are of the opinion that the defendant corporation was qualified to become, did become, and was a member of plaintiff Association from February 25, 1926, up to the time that plaintiff instituted its suit herein.

Defendant's next contention is that plaintiff's by-law fixing the dues of its members at an amount equal to 4/10ths of 1 per cent of all construction business done by them is invalid and contrary to public policy. The basis of defendant's contention that the by-law is contrary to public policy is that the sliding scale arrangement of dues provided for in the by-law gave each member of the Association an interest in the other members' contracts, discouraged competition and increased the cost of a job to the general public.

In order to pass upon this question we should first determine the nature of the services or benefits provided by plaintiff to its members.

Examining the evidence, we find that during the 10-year period in question there were approximately 350 electrical contractors in the City of Chicago, of which

53, or approximately 20 per cent were members of plaintiff Association. Out of the dues collected from its members the plaintiff paid its secretary treasurer a salary of $3,000 per year and its president $5,000 per year; and all expenditures of the Association were submitted to the members prior to the time the money was expended, in an annual budget prepared by the executive committee of plaintiff, and mailed out to all the members and approval thereof voted by them. Plaintiff, during the 10-year period in question, had a labor agreement with Local Union No. 134, International Brotherhood of Electrical Workers, which provided that all members of the Association were obligated to employ union labor, specified various working rules, and provided for an arbitration board consisting of five members of plaintiff Association and five members selected by the union to arbitrate any question that either the contractors' association or the union desired to have decided; the expenses of maintaining the arbitration board were paid out of the dues collected by plaintiff; and no electrical contractor not a member of plaintiff Association could use the arbitration facilities to adjust labor disputes or difficulties, except on payment of the same entrance fee and dues as Association members. The labor agreement between plaintiff and Local Union No. 134 further provided for group insurance of unemployed workmen and for loans to unemployed workmen; and provided that the purpose of this arrangement with reference to unemployed workmen was to preserve and keep a sufficient number of competent workmen available to the electrical trade.

The plaintiff Association also worked with the National Association of Electrical Contractors to obtain and preserve better conditions for electrical contractors; gave assistance to its members with reference to transactions with the Commonwealth Edison Co.; provided experts to testify in cases involving its members with reference to common practices and cus-

toms in the electrical business; worked with the National Association in connection with the training of electrical apprentices; kept informed of and participated in discussions concerning prospective city ordinances and State and Federal legislation and regulations affecting the electrical industry; kept its membership informed of such matters; and in general worked for the betterment of the electrical industry.

An analysis of the services thus rendered by plaintiff to its members shows them to be legal in their purpose and intent. The only remaining reason why the by-law providing reimbursement for these services might be declared contrary to public policy is the mere fact that the dues of a member of plaintiff Association are fixed upon a sliding scale or proportionate amount of business done by the members.

The defendant contends that the amounts to be paid as dues being proportionate to the amount of business done gave each member of the Association an interest in all of the contracts of the other members, and that this fact discouraged competition in bidding by members upon the various jobs. The law is well settled in this State that an agreement, between contractors bidding for work, which tends to suppress or stifle competition, is a restraint of trade, is against public policy and, therefore, void. (*Ray v. Mackin,* 100 Ill. 246; *Conway v. Garden City Paving & Post Co.,* 190 Ill. 89; *McMullen v. Hoffman,* 174 U. S. 639.) There are numerous other cases which uphold the doctrine that an agreement or bargain between contractors by which they agreed among themselves not to bid or enter into competition for a contract, with the purpose of chilling or stifling competitive bidding, is contrary to public policy and, therefore, void. The courts have almost universally condemned such agreements or arrangements among rival or competitive bidders, holding that, if the effect or tendency of a particular agreement or arrangement between competitors is to restrict

competition, then the agreement or arrangement is void as contrary to public policy.

We have considered this question and feel that it cannot logically be held that plaintiff's by-law is contrary to public policy because the dues of members are fixed or determined upon a sliding scale or proportionate amount of business done by the members. A member who did $200,000 of business a year manifestly would receive a great deal more service than a member who only did $10,000 of business a year. A large business enterprise would present more complications and problems than a small business enterprise, and the company that did $200,000 of business per year would necessarily have more labor problems than a small concern. A trade association formed to assist its membership through the various services performed by the plaintiff Association would be called on much more frequently by a concern which did as large a business annually as was done by the defendant.

Under these circumstances to hold that a trade association can only fix its membership dues at a certain flat rate, such as $100 or $200 per year, would place the trade association in the position that it could only fix as its dues an amount which its lowliest member could afford to pay. If the dues were fixed on the basis of the service rendered to the member who did the largest volume of business, that would prohibit all prospective members who were not doing as much business as the top-line contractor from joining the Association. If the top-line contractor were doing sufficient business and receiving such service and benefit from the Association that he would be willing to pay $2,500 a year dues, manifestly the low-line contractor, who was doing a small amount of business and receiving a small amount of service from the Association, could not afford to pay such a fee. Therefore, if the dues were fixed on the basis of the service rendered and received by the top-line contractor, all other contractor members, if they joined the Association, would

be paying more than they should equitably pay as dues, and lesser contractors would not join because they could not afford to join and pay for services which they would not receive. Similarly, if the dues were fixed on the service received by the low-line contractor, the trade Association could not survive because it would be rendering so much additional service for which it would receive no compensation; it would be paid by all members on the basis of the service received by the contractor member who did the smallest business.

Between the service rendered to the contractor who did the smallest business and the contractor who did the largest business, no median or average payment could be adopted because on any such basis the largest contractor would be paying less for his service than all other contractors, and the smallest contractor would be paying more for the service he received than any other contractor. There could be no median or average dues which could fairly and equitably be adopted as between the largest and the smallest.

Natural laws, such as the law of supply and demand, and fair compensation for services rendered and received, require that a trade association be paid according to the amount of service it renders. The only principle involved is whether a member of a trade association shall pay dues according to the amount of services the member receives, or whether a trade association can only charge a fixed amount annually to each member irrespective of whether that fixed amount is fair and just to the trade association and to the members. We are of the opinion that fixing of dues on the business principle of payment proportionate to service rendered is not illegal in principle and carries no stigma of being unethical in intent, in purpose, or in the result intended to be accomplished or which is actually accomplished by such payment.

The Trade Association Survey prepared by Dr. C. A. Pearce and associates in the Department of Commerce for the Temporary National Economic Commit-

tee (1941) discloses that of 204 national and regional trade associations, selected at random, approximately 61 per cent levy dues on a sliding scale similar to that employed by the plaintiff, in proportion to the size or business volume of their members. The Survey further states, "The political structure of the typical trade association is democratic . . . although the typical association includes within its membership the large firms in the industries and apportions the amount of dues and assessments to be paid by members according to their size and business volume in the case of approximately 44 per cent of the association . . . ."

In our opinion to hold that a trade association could not fix its dues proportionately to the amount of business done by each member would deal a death blow to the honest, legitimate trade association.

One of the objections raised to the payment of dues proportionate to the volume of business done is that the percentage charged by the Association would be added to the cost. We cannot see that this is true or that such action would so result. The benefits that the members receive from the Association necessarily bring about a reduction in the bid, whereas if they had not received the benefits from the Association the bid would necessarily be higher. And we, therefore, cannot follow the reasoning that dues fixed on a basis proportionate to the volume of business done would be added to the cost of a job any more than if the dues were fixed on a flat rate. In each case, whether flat or proportionate, the dues would be administration expense and should be so considered. If flat rate dues are legal and appropriate, we see no reason why dues proportionate to the volume of business done by a member should be condemned.

There is in proportionate dues no stifling of competition, no agreement that might injuriously affect the public, and no restraint of trade; they only provide a method of determining a just and equitable amount to

be paid by the member to the trade association for services actually rendered by the Association and actually received by the member. The member knows the basis of the dues when he joins the Association, and he is under no compulsion to join, but when he has joined and received the benefits and advantages of the Association, he cannot successfully claim that his contract to pay dues proportionate to the volume of business done by him is invalid and void unless it can be shown that such method of fixing dues is expressly contrary to the public policy of this State.

Defendant cites the case of *Kentucky Ass'n of Highway Contractors v. J. C. Williams,* 213 Ky. 167, 45 A. L. R. 544.

In that case, a nonprofit membership corporation of highway contractors brought suit to recover dues under a by-law which required payment to the Association of $\frac{1}{4}$ of 1 per cent on all highway work contracted for by a member. The court held that the agreement of the defendant to pay and plaintiff to receive a percentage of the price of all such public contracts was against public policy because it created a stimulus on the part of the member contractor to add to his bid on all public contracts the amount that the Association's contract forced him to pay to it, and to thereby recoup that amount from the public authority letting the contract.

The above case appears to hold that it is immaterial whether the plaintiff Association rendered a service to its members commensurate with the dues charged. We have held that the plaintiff Association did render services to its members commensurate with the dues it charged, and we are not in accord with the finding announced in the above *Kentucky* case. Under the holding of that court, any expense which was figured by the bidder as administration expense might be used to hold the contract void. Under that decision if flat rate dues in a trade association had been figured as a portion of the administration overhead expense, then such flat

rate dues would be proportionately added to the bid for the public work, and thus neither flat rate nor proportionate rate would be held legal. The decision in effect condemns all overhead expense, and might be carried to the extreme of holding as excessive the salaries of officers of bidders. We disagree with the principle announced in this case and cannot subscribe to its reasoning.

In the case of *Associated Wisconsin Contractors v. Lathers,* 235 Wis. 14, 291 N. W. 770, the court held that a by-law providing that each member should pay an assessment of $\frac{1}{4}$ of 1 per cent of the amount of each contract for highway work in which Federal, State or County funds were involved was invalid. The court in its opinion said, ''We consider the complaint as showing that respondent is exacting dues from its members measured by the amount of contracts for highway construction obtained by a member without corresponding benefit to the public, and as containing no allegation of facts that take the case out from under the rule.'' The court further held that the plaintiff must allege facts in its complaint which would show that the amount to be paid to plaintiff would not tend to increase the expenditure on the part of the public, and that in the absence of said allegations the complaint was insufficient.

If the above decision is based, as we presume it is, on the fact that there was no *allegation* or *proof* that the Association had rendered services to the bidder commensurate with the percentage charged, then we agree with it. We cannot presume that a trade association would arbitrarily fix its dues on the basis of volume of business done and not render services for the dues charged. But if the above decision is based on the broad principle that a trade association cannot be paid according to the value of the services rendered to its members, then we disagree with it. If it had been proved that members in that case had been enabled, through the services and co-operation of the

Association, to bid a lower amount than they would otherwise, and were enabled, through the services and co-operation of the Association, to furnish skilled labor and avoid labor disputes and other difficulties, then the Wisconsin court would doubtless have taken a different view of the question presented.

The case of *Constructors' Ass'n of Western Pennsylvania v. Seeds* (142 Pa. Super. Ct. 59, 15 A. (2d) 467), is a case based on the *Kentucky* case above discussed. We cannot subscribe to the reasoning of this case.

The case of *Jackson v. Sullivan,* 276 Ky. 666, cited as an additional authority by the defendant, decides that a contract among members of an association of contractors, prohibiting any member from bidding on a contract where a nonmember puts in a bid, was in restraint of trade and, therefore, void. We agree with the holding of that case but do not consider it in point here.

The court is of the opinion that the by-law of plaintiff Association does not tend to restrict bidding, does not stifle or suppress competition, and does not tend to add to the cost of electrical contracts. We, therefore, hold that said by-law is not contrary to public policy and is not void.

The defendant, being a member of plaintiff Association, was liable under its by-laws for dues proportionate to the volume of business done by the defendant. The amount due to plaintiff, if computed on a 10-year limitation, is $5,699.53; and the sum due, based on a 5-year limitation, is $276.38. The defendant contends that the 5-year and not the 10-year limitation applies herein. If the contract between the parties is partly oral and partly written, then it is an oral contract and the 5-year limitation applies. The contract sued on in this case consists of the written application of A. S. Schulman for membership in plaintiff Association; the letter from the defendant dated February 25, 1926, re-

questing plaintiff to change the name of A. S. Schulman on its records to read A. S. Schulman Electric Company; and plaintiff's constitution and by-laws.

It has been held by our courts under similar cases that the application for membership in a club or benefit society, together with the acceptance thereof and the by-laws of the club or benefit society, constitute a written contract between the parties so long as the person remains a member. (*Jones v. Supreme Lodge Knights of Honor*, 236 Ill. 113; *Ralph Martin & Co., Inc. v. McCue*, 304 Ill. App. 358.) We are of the opinion that the evidence herein shows that the contract between the parties is a written contract and not a partly written and partly oral contract. The defendant is, therefore, liable under the 10-year limitation and not under the 5-year limitation.

Holding, as we do, that defendant was a member of plaintiff Association and that it is liable to the plaintiff for the sum of $5,699.53 for unpaid dues, it follows that the amounts paid by defendant as dues cannot be recovered in this action. The case of *State Bank of Blue Island v. Benzing*, 383 Ill. 40, cited by defendant as an additional authority on the point that money paid under a contract prohibited by law can be recovered in an action for money had and received, is not pertinent here.

The judgment in so far as it disallowed the set-off filed by the defendant is affirmed, and the judgment in so far as it disallowed the claim of plaintiff is reversed; and the cause is remanded to the superior court of Cook county with directions to enter a judgment against the defendant on defendant's set-off, and in favor of plaintiff and against the defendant on plaintiff's complaint, for the sum of $5,699.53 and costs.

*Judgment affirmed in part and reversed in part and cause remanded with directions.*

BURKE, P. J., and KILEY, J., concur.