(No. 28506.—)
Electrical Contractors' Association of the City of Chicago, Appellee, *vs.* A. S. Schulman Electric Company, Appellant.

*Opinion filed September 19, 1945—Rehearing denied Nov. 15, 1945.*

Miller, Gorham, Wescott & Adams, (Frederic O. Mason, of counsel,) both of Chicago, for appellant.

Cassels, Potter & Bentley, (Edwin H. Cassels, William S. Warfield, III, and George C. Bunge, of counsel,) all of Chicago, for appellee.

Mr. Justice Murphy delivered the opinion of the court:

Electrical Contractors' Association of the city of Chicago, hereinafter referred to as plaintiff, is a corporation organized prior to 1919 under the laws of Illinois. It is a nonprofit corporation, created in the interests of a class of those engaged in electrical construction and those who sell electrical appliances at retail. Those for whom it was created and is maintained become participants by·complying with certain rules and regulations referred to as the constitution and bylaws. The participants are referred to as members.

Defendant, A. S. Schulman Electric Company, was a successor to the business of A. S. Schulman, who was a member of plaintiff prior to the organization of defendant in 1926. After defendant succeeded to the business of A. S. Schulman, it paid plaintiff dues to maintain its membership in plaintiff company upon the belief that it was a member.

In October, 1939, plaintiff started this suit in the superior court of Cook county against defendant to recover the difference between what defendant owed plaintiff as dues, if payment had been made at the rate specified in the constitution and bylaws, and the amount actually paid. Defendant interposed several defenses, one of which was that the constitution and bylaws were void, being contrary

to the public policy of this State and of the United States in that they restrained trade and tended to stifle competition among the members of the trade generally. Defendant also pleaded that it never was a member of plaintiff association; that it, as an Illinois corporation, could not legally become a member of plaintiff association, a non-profit corporation. The defense was made that plaintiff's action was upon an open account or verbal agreement and barred by the five-year statute of limitations. Defendant also filed a counterclaim to recover $8607.82, which represented the amount it had paid plaintiff as dues during the time it was considered to be a member of plaintiff association. It was alleged that since this suit was instituted it learned for the first time that the payments had been made under a mistake of fact, believing that it was a member, when in fact it was not and that the payments were made under the constitution and bylaws which contravened the public policy of the State and United States. Issues were joined on the complaint and counterclaim.

At the conclusion of all the evidence, the court directed a verdict for plaintiff on defendant's counterclaim, and in favor of defendant on plaintiff's demands. On appeal to the Appellate Court, the judgment, insofar as it denied defendant's counterclaim, was affirmed, and, insofar as it disallowed plaintiff's claim, it was reversed and the cause was remanded, with directions to enter judgment in favor of plaintiff and against defendant in the sum of $5699.53. Defendant's petition for leave to appeal to this court was allowed and the cause is here for a further review.

Defendant's contentions on this appeal are: (a) the constitution and bylaws under which plaintiff seeks to collect dues are void, being in violation of public policy; (b) that plaintiff's demands are barred by the five-year statute of limitations; (c) that defendant never became a

member of plaintiff association and therefore is not liable for unpaid dues, and (d) the Appellate Court erred in remanding the cause with directions to enter judgment when there was an issue of fact to be determined by a jury.

By the terms of the constitution and bylaws, participation in plaintiff's corporate affairs was limited to those who qualified to become members and who thereafter sustained their membership by payment of dues. The one who sought membership was required to make application in writing on blanks provided by plaintiff and accompany it with an initiation fee of $50. Each application had to bear the endorsement of two members in good standing. Upon receipt of the application, plaintiff referred it to its executive committee and if the committee approved, it was submitted to a vote at the next regular meeting of the members. A majority vote was a prerequisite to membership. Under such circumstances, the application, its approval and the constitution and bylaws constituted the agreement by which an applicant could become and continue to be a member of the association. They provided for the payment of dues by each member and in this action the constitution and bylaws constitute the basis of plaintiff's claims. If they contravene public policy, they are unenforceable and plaintiff's action fails. The contention of defendant, that there was such violation, necessitates a construction and interpretation of the constitution and bylaws. This is a question of law. *Zeigler* v. *Illinois Trust and Savings Bank,* 245 Ill. 180.

The substance of the provisions of the constitution and bylaws pertinent to the public-policy question is as follows: The preamble to the constitution stated that the interests of competitors are interdependent. "Competitors who assist each other are mutually benefited and are themselves injured by acts tending to harm another. With co-operation 'Competition is the Life of Trade,' without co-opera-

tion competition is the death of trade." The purposes of
the association were enumerated to be, (1) the discussion
of subjects of interest and value to the members; (2) the
advancement and improvement of the industry; (3) the
collection and dissemination of statistics and information
of value to its members, and (4) co-operative action by
the members in connection with all things bearing on the
well-being of their industry. An executive committee of
seven members was elected by ballot. The chairman of
the committee was president of the association. The com-
mittee was given the power to select a secretary and treas-
urer, prescribe their duties and to appoint standing com-·
mittees. As stated, they passed upon applications for membership
but their decision approving an application was
subject to the will of a majority of the members voting at
a regular meeting. Originally, the constitution provided
for three classifications of members but this was amended
to include but two, namely, contractor-dealers and dealers.
The former was defined as members "who employ building
construction mechanics that the Association makes work-
ing agreements with." Dealer membership was defined as
members who do not employ building construction me-
chanics and who are primarily engaged in the retail mer-
chandising of electrical appliances. Dealer members were
not allowed the privilege of debate or vote on matters
concerning construction or labor working agreements. In
addition to the initiation fee of $50, each member was to
pay dues equal to 4/10 of 1 per cent of all construction
or merchandising business, computed on monthly billings.
A minimum of dues in any year was fixed at $75 for
contractor-dealers and $50 for dealer members.

There is no precise definition of public policy and no
rule has been formulated which applies to all contracts
and by which they may be measured and tested to deter-
mine whether or not they contravene public policy of the

State or nation. The public policy of the State or nation is to be found in its constitution and statutes and, when they are silent, then in its judicial decisions and the constant practice of its government officials. *Zeigler* v. *Illinois Trust and Saving Bank,* 245 Ill. 180; *Bell* v. *Farwell,* 176 Ill. 489.

The basis upon which defendant rests its contention on the public-policy question is that the provision which provides for the payment of dues, the amount of which is computed at a percentage of business done, tends to stifle competition among members of the association. The specific question is as to whether the dues provision of the bylaws, when considered in connection with the other provisions, tends to stifle competition.

The power by which courts may declare a contract void as against public policy is far-reaching and it is to be exercised only when it clearly appears that it is contrary to a constitutional mandate, a statute, judicial decisions, or that it manifestly tends to injure the public in some way. (13 C.J. sec. 366, page 427.) In *Zeigler* v. *Illinois Trust and Savings Bank,* 245 Ill. 180, which was a case that involved a test as to whether a contract contravened public policy, this court said: "The laws and the public policy of the State permit and require the utmost freedom of contracting between competent parties, and it is only when a contract expressly contravenes the law or the known public policy of the State that courts will hold it void." The question must be determined from the terms of the contract itself and, in considering the ends to which it leads, the courts are not privileged to ascribe illegal purposes where there is nothing in the contract from which such a conclusion may be reasonably drawn. In *Kellogg* v. *Larkin,* 3 Pin., Wis., 123, 56 Am. Dec. 164, it was said: "Before a court should determine a contract which has been made in good faith stipulating for nothing that

is *malum in se,* nothing that is made *malum prohibitum,* to be void as contravening the policy of the state, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial, not theoretical or problematical."

Defendant contends that the bylaws which fixed the dues each member was to pay the association at 4/10 of 1 per cent of the business such member transacted condemns the agreement as being against public policy, and this without regard to the purposes of the association or the intent of the parties as to what plaintiff was to do with such dues. In support of such proposition, it cites cases from other jurisdictions, as follows: *Kentucky Ass'n of Highway Contractors* v. *J. C. Williams,* 213 Ky. 167, 45 A.L.R. 544; *Associated Wisconsin Contractors* v. *Lathers,* 235 Wis. 14, 291 N.W. 770; *Constructors' Ass'n of Western Pennsylvania* v. *Seeds,* 142 Pa. Sup. 59, 15 Atl. 2d 467; *Bailey* v. *Master Plumbers Ass'n,* 103 Tenn. 99. There are statements in some of the cases defendant relies upon which support its proposition.

It is well settled in this State that an agreement between contractors bidding for work, which tends to suppress or stifle competition, is against public policy and therefore void. (*Conway* v. *Garden City Paving and Post Co.* 190 Ill. 89; *Ray & Whitney* v. *Mackin,* 100 Ill. 246.) The statement of the principle in the cases cited is founded upon the fact that there was something from which the court could determine that there was an agreement, express or implied, which tended to stifle competition, but defendant's statement is not grounded upon such an agreement. Can it be said that an agreement between contractors to pay dues to their association fixed at a percentage of the business done is an agreement which, without more, has the effect of stifling competition in bidding, whereas, if the same contractors paid their association dues at a flat rate and without regard to the amount of business

done, it would not interfere with competitive bidding? We do not find that the basis of payment of dues has any just distinction. It must be conceded that either method may interfere with competitive bidding, but it is a matter which arises from other circumstances in connection with the making of the contract and does not rest solely upon the method by which the dues each member is to pay the association are computed. There is nothing in the mere form of payment of dues on a percentage basis that supports an inference that it has something sinister about it.

Defendant contends that since the amount of dues each member pays to the association shall be equal to $4/10$ of 1 per cent of the business transacted, this gives to every other member an interest in the contract and, having such an interest, creates a condition which tends to destroy competive bidding. To adopt such a conclusion is to assume that dues paid will, in the course of time, be distributed to the members in the form of dividends. There is nothing in the constitution or bylaws to support it. It is a nonprofit corporation and the accumulation of money or the division of it in form of dividends to the members is not provided. The objects of the association, above enumerated, contain no reference to contractors' interest in the earnings of the association. The objects numbered 1, 2 and 3 clearly and definitely contain nothing that could be interpreted as a scheme among the members to control bidding or to stifle competition. Purpose number 4 calls for co-operative action among the members in all things bearing on the well-being of the industry. Such purpose is broad, but to say that it contains a design to stifle competition is to go beyond its plain terms and ascribe ulterior motives to the members of the association where there is no basis for it.

The sole question in this case is as to the validity of the agreement as evidenced by the constitution and bylaws of the association. It is not a case where we need go

beyond the instrument to determine the interpretation the parties placed upon it, but evidence was introduced to show the consideration each member received for the dues paid. The one who was secretary and treasurer of the association for a number of years testified that the association employed an office secretary and a research engineer. In enumerating the things the association did for its members, he included the furnishing of statistical data, the obtaining of proper regulation of electrical inspection, assistance in furnishing expert advice in matters pertaining to the trade generally, and assisting in the designing of electrical appliances. It also appears from his testimony that the employees of the various members of the association were members of a labor union, and in connection with that, he stated: "We formulate a standard form of agreement and labor trouble and disputes are arbitrated and in case we can't settle our troubles, or if we have a disagreement or jurisdictional strife between two or more trades, we submit the matter to arbitrators and they settle it."

The case of *Kentucky Ass'n of Highway Contractors v. J. C. Williams*, 213 Ky. 167, 45 A.L.R. 544, cited by defendant, was a case where a nonprofit membership corporation of highway contractors brought suit to recover dues under a bylaw which required payment to the association of 1/4 of 1 per cent of all highway work contracted for by the member. The court held that such an agreement created a condition whereby a member would add to his bid the amount he was required to pay the association, thereby collecting from the public the amount he was required to pay as dues. It is our view that unless there is proof that such percentage was added to the contract price, there is nothing that condemns it as being against public policy any more than if the contractor had paid a like amount as a flat rate fixed without regard to the

amount of business transacted. We apprehend that any dues which a member is required to pay at a flat rate would be carried as an overhead charge and would be reflected in the bids made, the same as any other overhead item.

The case of *Associated Wisconsin Contractors* v. *Lathers*, 235 Wis. 14, 291 N. W. 770, was an action at law by an association of Wisconsin contractors against the defendant to collect a membership assessment claimed to be due from the defendant as a member of the association. Defendants' demurrer to the complaint was overruled. His contention was that the annual percentage assessment based on the bids of those whose contracts were accepted was the exaction of a tribute from public moneys and that, whether or not actual injury was shown, the mere tendency to chill competition was present and opened the door to vicious practices. In the course of the discussion, the court stated that where the complaint shows an assessment on contractors engaged in public works determined by the volume of public business obtained by them, the inference is that the expenses will be allocated to the bids and will tend to increase the expenditure to the public. The court said: "If that inference is not repelled by allegations of fact showing that such is not the case, the complaint is then insufficient for failure to state a cause of action." It was held that the complaint did not disclose facts to overcome such inferences and the contract was held void. As previously noted, we do not agree that any inference that the public is going to be injured arises from the mere fact that the money collected from each member was computed on the percentage of the business done. The case of *Constructors Ass'n of Western Pennsylvania* v. *Seeds*, 142 Pa. Sup. 59, 15 Atl. 2d 467, involved a provision similar to the one in the *Kentucky case*, and follows that case. It arose in an action by a contractors' association to collect

dues from its members. It follows the *Kentucky case* upon the principle which we do not adopt.

Trade associations, like co-operative organizations in the fields of labor and agriculture, are well established and accepted as American institutions. The Trade Association Survey, as prepared by the Department of Commerce in 1941, shows that out of a group of 204 national and regional associations selected at random approximately sixty-one per cent levy dues on a sliding scale in proportion to the size or volume of business. In the 10th Annual Report of the Secretary of Commerce (1922) it was stated: "The whole movement toward co-operative action arises from a fundamental need to which we must give heed. Where the objectives of co-operation are to eliminate waste in production and distribution, to increase education as to better methods of business, to expand research in processes of production, to take collective action in policing business ethics, to maintain standards of quality, to secure adequate representation of problems before the Government and other economic groups and to improve conditions of labor, to negotiate collectively with highly organized groups of labor, to prevent unemployment, to supply information equally to members and to the public, upon which better judgment may be formulated in the conduct of business; then these activities are working in the public interest."

Our conclusion is that plaintiff's constitution and by-laws, and particularly the provision for dues, are not, under the facts shown, contrary to public policy.

The items included in plaintiff's demand covered a period of more than ten years. Applying the ten-year statute of limitations there would be $5699.53 due, while if the five-year limitation was applied, the total not barred would be $276.38. Defendant urges that the agreement was partly written and partly oral, and that being so, the five-year limitation act applied. The agreement which

controls is defendant's request to plaintiff, on February 25, 1926, to have the name of A. S. Schulman on its records changed to read, A. S. Schulman Electric Company, and plaintiff's constitution and bylaws. These are all written and nothing further is needed to establish the contract. The reasoning applied in *Jones* v. *Supreme Lodge Knights of Honor,* 236 Ill. 113, is applicable here. That was an action on a benefit certificate issued by the society of which the deceased was a member. It was held that the application, the constitution and bylaws and the certificate constituted the contract. They were in writing and no verbal testimony being necessary to establish the contract, the five-year statute did not apply.

Defendant's contention that it never became a member of the plaintiff association is urged on two grounds: (1) that the conditions stated in the bylaws by which a member was admitted to membership were never complied with by either of the parties, and (2) that defendant being a corporation could not legally become a member in a voluntary nonprofit association. Defendant's letter of February 25, 1926, addressed to plaintiff, requesting the name of A. S. Schulman on the record be changed to read A. S. Schulman Electric Company was sufficient to be treated by plaintiff as an application for membership. Plaintiff had the right to waive the requirement of the rule that applications be on printed forms and endorsed by two members if it so desired. Parties could also waive the requirements as to voting upon the application. Notwithstanding the departure from the course prescribed by the bylaws, defendant's representatives attended 90 per cent of the meetings of the association. There was a provision which fixed a penalty of $2 for failure of a member to attend a regular meeting. Whether defendant's representative attended to avoid the penalty, or whether the attendance was prompted by an interest in the affairs of the association is

immaterial, for in either event there is ample evidence that the parties considered defendant a member of the association. Under such circumstances, defendant is not privileged to open the question as to whether its agent acted without authority in sending the letter requesting a change on the records to show it as a member. It cannot now claim that the payments of dues to plaintiff were made under a mistake of fact, that it thought it was a member when in fact it was not.

The statute under which defendant was organized did not, during the period covered by the accounting, contain an express provision that a business corporation such as defendant could become a member of a nonprofit association such as plaintiff. Regardless of the statute, defendant became a *de facto* member if not a *de jure* member. From 1926 to 1939, it recognized its obligation to plaintiff and paid plaintiff $8607.82 as dues. It is conceded that the payment made was not all that was due. Defendant received plaintiff's services and accepted the benefits of being a member of the association. Under such circumstances defendant is in no position to say that the statute under which defendant was organized did not authorize the acceptance of it as a member.

Defendant's contention that the Appellate Court erred in remanding the cause with directions to enter judgment is without merit. There was no issue of fact determined by the Appellate Court. Its conclusions were based upon propositions of law. The amount due was not in controversy, and the only issue was the question of law as to whether or not there was liability.

The judgment of the Appellate Court was correct and is affirmed.

*Judgment affirmed.*