[Civ. No. 14408. First Dist., Div. Two. Jan. 30, 1951.]

BAY AREA PAINTERS AND DECORATORS JOINT COMMITTEE, INC. (a Nonprofit Corporation), Respondent, v. I. ORACK, Appellant.

M. S. Huberman for Appellant.

Tobriner & Lazarus for Respondent.

SCHOTTKY, J. pro tem.—This is an appeal from a judgment declaring and decreeing that a questioned provision in a contract was valid and enforceable and that appellant was legally obligated to deposit the sums specified in the contract.

The instant case arose from an action for declaratory relief which respondent, a nonprofit corporation, brought against appellant, who, although not a member of a signatory association, became a party to the contract as a nonmember signatory. The complaint sets forth the contention of appellant that the provision for financing the administration of the agreement is "discriminatory against appellant; imposes an unfair and unreasonable imposition and restraint upon trade and commerce," that it is a "discrimination against defendant," and "the exaction of such charge is unlawful"; that this section is "invalid and contrary to law." The complaint also sets forth respondent's contention that the questioned provision is valid and seeks a judgment that "plaintiff is entitled to defendant's share of the expenses of administering the contract."

Respondent is a nonprofit corporation, the members of which are representatives of associations of painting and decorating contractors in the San Francisco Bay Area, and representatives of unions of painting and decorating workers in that area. Respondent was organized in order to function as a permanent joint committee under a contract executed by these associations and unions in behalf of their respective members.

Appellant is a painting contractor in the Bay Area but is not a member of any of the associations. He did, however, become a party to the agreement as a so-called nonmember signatory.

The contract sets forth the organization and functions of respondent and provides for the establishment of local joint committees and other committees and boards. An equal number of representatives from the employer organization and the employee organization in a given locality make up the membership of a local joint committee. A local joint committee is authorized to adjust disputes and grievances and is empowered to have access to records pertaining to violations of the agreement with authority to request testimony under oath before a notary public. Funds advanced by the signatories of the agreement are to be used exclusively for such enforcement purposes. An employer who is not a member of one of the associations may become a party to the agreement

either by joining the association or by signing the agreement individually; in the latter case such a party is designated a nonmember signatory.

The joint committee issues shop cards to members of the association and to nonmember signatories upon the payment of a twelve dollar ($12) flat fee. Since the member of the association pays dues to it for the purpose of financing the contract, the agreement correspondingly obligates the nonmember signatories "to deposit on account of his share of the expense of administering the contract an amount equal to the yearly dues paid by the Association." The agreement specified the reason for this provision for financing in the following language:

"Such shop cards are issued for the following reasons: It is agreed that it is unfair for any person to be bound by the terms of this agreement unless other parties thereto observe it likewise. It is recognized that it would constitute unfair competition for one employer to observe reasonable working conditions agreed upon while his competitors ignored such conditions. To assure all parties that every party to the agreement complies therewith, it is necessary to use investigators and to maintain a central supervising agency operating as and through the Local Joint Committee. Such supervising involves expense which should as a matter of equity, be pro-rated on a reasonable basis among all parties who benefit by this agreement and its observance. It is therefore agreed that the expense of supervising be borne by the Association and /or Chapters and that Shop Cards should be issued as above described to attest that the proportionate share of such expense has been met. As nonmember signatories do not share in the contribution made by the Association, such nonmember signatories shall bear a reasonable prorate on the cost of supervising and shall make a deposit on account of their share of the cost. Such deposit shall be made at the time of the issuance of the cards herein provided and in the amounts herein specified and upon the specified amounts being deposited a yearly renewal card will be issued."

The actual amount of the yearly dues to the association is $60. Hence, the financial obligation of the nonmember signatories, in order to obtain a shop card, amounts to $72.

While the agreement specifies that all funds advanced by signatories are to be used exclusively for enforcement purposes, it likewise provides that if there are any deficits they

shall be borne by the employer association and union groups rather than by the nonmember signatories.

Appellant states that the question to be determined upon this appeal is whether or not in a collective agreement between associations of employers and unions it may validly be provided that nonmember employers must as a condition to becoming party to such an agreement deposit an annual sum equal to that paid by association members to be used in securing compliance with the provisions of the agreements. Appellant states frankly that he is not contending that a collective agreement between associations of employers and labor unions is invalid even though its necessary effect in a highly unionized area is to require nonmember employers to become parties to the agreement in order to secure labor. He states further that his quarrel is not with the objective of the agreement to establish uniform wages and working conditions throughout the area but rather with the particular sanction or method employed for enforcing it. It is appellant's position that in the absence of legislative sanction the provision for assessments against nonmember employers is discriminatory and is invalid restraint of trade. However, appellant cites no authorities in support of his contentions.

The same contentions were made by appellant in the trial court and the trial judge (the Honorable Milton D. Sapiro) in a well reasoned opinion ruled against these contentions. We believe that said opinion correctly determined the issues involved and we adopt the following portions thereof as part of the opinion of this court:

"The express purpose of the agreement under which plaintiff was created was to stabilize the painting industry by creating harmonious relations and maintaining stability of conditions of employment, the subject matter of this proceeding, first provides for the organization of the plaintiff committee, then proceeds to set out certain provisions covering apprentices, employers and unions. It then provides for the wages and working conditions of employees, and other terms and considerations as to painting work.

"Provision is made in the agreement for the supervision of the activities of the employers for the purpose of assuring their conformance to the working conditions that had been established.

"The cost involved in supervising the conduct of the employers is borne by a fund to which members of the association are required to contribute $12, for which an official shop

card is issued, and nonmembers of the association are required to pay $12 plus certain dues, and for which they receive an identification card. The dues that the nonmembers are required to pay are equal to the dues paid by the members of the associations to their associations. Defendant has contended that the agreement is unenforceable as to him because it is invalid on its face. He bases his contention on a claim that the agreement violates the anti-trust laws, and also that there is discrimination. Neither of these grounds of objection is tenable. The agreement appears clearly to be valid and enforceable.

"It has been long recognized, and it is clearly a desirable situation to achieve, that employers and unions work together for stability in the industry. As this agreement recites, if an employer enters into an agreement with the union and fails to conform to the working conditions, it would result in unfair competition among other employers, and would also create unrest, labor disturbances, and many other situations that would work to the disadvantage of public welfare. It is therefore proper for associations of employers to agree on methods of procedure whereby their activities might be policed and supervised so as to insure observance of the labor agreement entered into between them.

"Inasmuch as this is true as to the members of the association, it certainly follows that this activity could be extended one step further and a nonmember who adheres to the agreement may well join in such an agreement for the purpose of producing stability in the industry. It follows as a matter of course that there is a certain cost involved in supervising and policing the industry. It is proper for this cost to be borne by a charge placed on the employers. The cases cited by plaintiff in the memorandum filed: *Electrical Contractors' Assn.* v. *Schulman Electric Co.*, (1945) 391 Ill. 333 [63 N.E.2d 392, 161 A.L.R. 787], and also *Griffiths & Sprague Stevedoring Co.* v. *Waterfront Employers Assn. of Pacific Coast* (1947), 162 F.2d 1017, clearly set forth why such agreements are not in restraint of trade. Likewise in *Minkoff* v. *Jaunty Junior, Inc.* (1942), 36 N.Y.S.2d 507, it is recognized that agreements entered into between employers and unions for the bettering of conditions in the industry, even where the employer is called upon to bear a charge involved therein, do not constitute illegal monopolies or restraints of trade. So here the agreement itself cannot be said to constitute a monopoly or restraint of trade. To the contrary, its provi-

sions that would produce harmony and peace in an industrial activity are of the type that ought to be encouraged, and the court should make every effort to see that they are lived up to for the purpose of producing industrial peace that would so benefit the community.

"The particular agreement involved in this case does not in any manner control prices, nor limit the activities of the employer parties so as to stifle or suppress competition, nor injure the public. It purports only to regulate relations between employer and employee groups. There is nothing in the contract that would point to the contrary.

"The claim of discrimination is not well founded. It is true that the nonmember employer pays the joint committee a sum greater than that paid directly to the joint committee by the employer who is a member of an association. However that employer pays dues to the association in a sum equal to the amount required to be paid by the nonmember employer to the committee. The employers are placed in exactly the same position when it comes to a determination of the amount expended by them in this activity. The fact that the nonmember employer pays to the committee rather than to an association does not constitute a discrimination, inasmuch as the amounts paid are exactly the same. There is no contention, and there could be no contention, that the amounts paid are unreasonable because it appears from the agreement that the charge made is but a small charge that would not work a hardship on any employer.

"There seems to be no reason whatsoever for declaring this agreement invalid. On the other hand, there seems to be ample reason to sustain the agreement and to grant the declaratory relief called for by the complaint."

In view of the foregoing we believe the judgment should be and the same is hereby affirmed.

Nourse, P. J., and Dooling, J., concurred.