28 Cal.Rptr. 425]

[Civ. No. 20375. First Dist., Div. Two. Feb. 14, 1963.]

ASSOCIATED PLUMBING CONTRACTORS OF MARIN, SONOMA AND MENDOCINO COUNTIES, INC., et al., Plaintiffs and Appellants, v. F. W. SPENCER & SON, INC., Defendant and Appellant.

2

Lawrence E. Wright for Plaintiffs and Appellants.

Tom B. Markley for Defendant and Appellant.

KAUFMAN, P. J.—By this action, the plaintiff, Associated Plumbing Contractors of Marin, Sonoma and Mendocino Counties, Inc., a trade association (hereinafter referred to as

the Marin Association) and its individual members, the remaining plaintiffs, seek to enjoin the defendant, F. W. Spencer & Son, Inc. (hereinafter referred to as Spencer) from the further prosecution of an action pending before the superior court in San Mateo County, in which Spencer is seeking damages for breach of contract from Associated Construction and Engineering Company of California, Inc., a general contractor (hereinafter referred to as Associated Construction).

A detailed exposition of the facts is necessary for an understanding of the issues presented by this appeal. The Marin Association is a California corporation duly organized and existing as a trade association of licensed plumbing, heating, and air conditioning contractors. All of the individual plaintiffs are members of the Marin Association. In December 1954, the Marin Association adopted and agreed to abide by certain ''Fair Trade Practice Rules'' which are still in effect. These rules were adopted and have existed for the purpose of insuring fair and open competition in the plumbing contracting industry in the Bay Area and to provide to general contractors and the public responsible bidding and contracting services. The rules provide that the Marin Association is to establish a bid depository for receiving bids in connection with various construction projects and provide for a one per cent bid depository fee.

Spencer, a California corporation, is a licensed plumbing and heating contractor, and a member of the Mechanical Contractors Association of Northern California, Inc. (hereinafter referred to as the San Francisco Association). The members of the San Francisco Association are heating, piping, and air conditioning contractors, licensed and engaged in such business in this state. In January 1956, the San Francisco Association adopted and agreed to abide by certain Fair Trade Practice Committee Rules and Regulations with Interpretations, substantially similar to those adopted by the Marin Association. Prior to the time of this controversy, the San Francisco Association had agreed with the Marin Association that members of the San Francisco Association would submit their bids for heating, plumbing, piping, and air conditioning work in Marin County through the bid depository established by the Marin Association. Except for its membership in the San Francisco Association, Spencer did not individually and expressly agree to abide by the Fair Trade Practice Rules of the Marin Association.

On October 1, 1957, in accordance with the rules of the Marin Association, a depository was opened at the office of the American Trust Company in San Rafael, for the plumbing, heating, and air conditioning work to be performed on a portion of the Corte Madera Shopping Center. The subcontractors' bids were to be deposited not later than 11 a.m. on October 15, 1957, as the opening of the general contractors' bids was scheduled for 3 p.m. on the same date. The lowest bids submitted through the depository were the bids prepared by plaintiffs, Currie Heating Company and Ernest Ongaro, who made public their bids as of 11 a.m.

Spencer did not submit a bid through the depository but waited until after 3 p.m. when the owner of the Corte Madera Shopping Center awarded the general contract to Associated Construction. Spencer then submitted an oral bid to Associated Construction, and on the following day, October 16, 1957, Spencer submitted its written bid to Associated Construction. On October 30, 1957, Associated Construction advised Spencer that a purchase order would issue for the work on conditions set forth in their letter as soon as progress schedules for the job could be completed.

Thereafter, following post-bidding negotiations and because of the intercession of the Marin Association and plaintiffs, Currie Heating and Ongaro, on November 11, 1957, Spencer was notified by Associated Construction that the negotiations for the work on the Corte Madera Shopping Center would not be completed. The Marin Association, Currie Heating and Ongaro received work orders from Associated Construction with a hold harmless agreement in respect of any claims Spencer would have against Associated Construction. Prior to receiving the purchase orders from Associated Construction, Currie Heating and Ongaro reduced their respective bids to a sum totaling $100 less than the written bid made by Spencer to the general contractor on October 16, 1957. The progress schedule referred to in Associated Construction's October 30 letter to Spencer was not completed until after November 11, 1957.

Thereafter, Spencer filed an action in the San Francisco Superior Court against Associated Construction alleging that on or about October 30, 1957, Associated Construction entered into a contract with Spencer for the performance of the plumbing, heating, and air conditioning work at Corte Madera and thereafter repudiated the contract and prevented

Spencer's performance, and sought damages of $29,808. On or about April 8, 1958, the matter was transferred to San Mateo County where it was pending at the time of the trial of this action. Subsequently, the plaintiffs filed this action to enjoin Spencer from proceeding with the San Mateo County action, or in the alternative, seeking money damages in a sum equal to any amount awarded to Spencer in the San Mateo action. Spencer answered and cross-complained to recover damages from the Marin Association for its interference with its alleged contract with Associated Construction and alleged that the rules of the Marin Association were agreements in restraint of trade and combinations in restraint of trade in violation of the Business and Professions Code, sections 16600-16758.

The matter was tried without a jury. The trial court found the facts substantially as stated above, and further found that it was not clear whether Associated Construction's October 30, 1957, purchase order to Spencer was intended to be on the basis of Spencer's written bid of October 16 or the oral bid of October 15 in the amount of $133,750. In deference to the San Mateo action, the court made no finding as to whether or not a contract was entered into between Spencer and Associated Construction. The court also found that Spencer prepared figures for the submission of a bid prior to 11 a.m. on October 15, 1957, but did not pirate the bids of Currie Heating and Ongaro, but studiously held back and refrained from bidding until the successful general contractor was ascertained. That in this action, Spencer was motivated by a desire to keep its men on the job in the Corte Madera area where it was performing another subcontract for the Barrett Construction Company; that the costs and expenses of preparing the bids were from one-two per cent of the cost of the work; that the cost of the preparation of the bids by Currie Heating and Ongaro was approximately $1,500, a reasonable expense for the preparation of such a bid.

The court then concluded that the restraint imposed by the Marin Association's rules is not greater than is required for the protection of the persons for whose benefit the restraint is imposed; that the rules as to separate and combination bids do not necessarily restrain competition, but provide for flexibility; that there is no showing that the rules increase costs or are different from what general contractors desire; that the general contractor is not bound to accept the lowest

bid; that a combination between different levels of the construction industry to the prejudice of the consumer has not been established; that the fact that all agree to refrain from further competition for 90 days, as well as the provisions for extra work, is a reasonable restraint in the light of the ends to be served; that the one per cent fee provision is not illegal.

The court also concluded that the rules of both the Marin and San Francisco Associations are a legal arrangement for free, open, but fair competition; that by virtue of the fair trade practice rules of both associations, the correspondence between the two associations and the notices from the San Francisco Association to its members, Spencer was obligated to plaintiffs to follow the procedures set forth in the rules of the San Francisco Association and the arrangement of the San Francisco Association with the Marin Association; that the Marin Association and its members were entitled to rely upon Spencer's so conducting its business; that Spencer violated its obligations in submitting a bid without going through the depository; that, therefore, plaintiffs were entitled to interfere with defendant's relations with Associated Construction. In accordance with its findings and conclusions, the court denied relief on both the complaint and the cross-complaint, and entered its judgment.

Both sides appeal from the judgment. Both argue that the findings are not supported by the evidence and that the court erred in its conclusions of law. The plaintiffs argue that Spencer did pirate the Currie-Ongaro bid and that they are entitled to the relief requested. Spencer contends that the rules of the two associations are unlawful restraints of trade; that it could not be bound thereby because of its membership in the San Francisco Association; that it did not violate any of its obligations in submitting its bid for the Corte Madera work to the general contractor without using the bid depository of the Marin Association, and is entitled to the relief requested.

After a careful review of the record and the existing authorities, we have concluded that all of the findings are supported by substantial evidence, and that the approach of the trial court in its excellent and well-reasoned memorandum opinion is the proper one for the resolution of the morass of issues presented herein. We, therefore, do not deem it neces-

sary to discuss in detail each of the numerous issues raised by the parties.

As to the major contentions of the plaintiffs, we have concluded that the trial court correctly denied their request for an injunction. An injunction will not be granted to stay judicial proceedings already pending. (Civ. Code § 3423; *Southern Pac. Co.* v. *Robinson,* 132 Cal. 408 [64 P. 572, 12 L.R.A. N.S. 497]; *Atchison etc. Ry. Co.* v. *Smith,* 42 Cal. App. 555 [183 P. 824]; *Bartholomew* v. *Bartholomew,* 56 Cal. App.2d 216, 225 [132 P.2d 297].) Furthermore, the parties to this action and the San Mateo one are not identical.

We turn next to Spencer's argument that the rules of the Marin Association are illegal and void as a restraint of trade and commerce, preventing free competition, in violation of section 1608 of the Civil Code and the Cartwright Act. (§§ 16700-16750, et seq. of the Bus. & Prof. Code.) We cannot agree. The purpose of the Cartwright Act is to maintain competition completely free, unlimited, and unfettered and it makes unlawful partial restrictions and limitations on competition as well as those which result in its complete absence. (*Kold Kist, Inc.* v. *Amalgamated Meat Cutters etc. Local No. 421,* 99 Cal.App.2d 191 [221 P.2d 724].) However, it does admit that economic considerations may justify restraints of trade in certain circumstances. (*People* v. *Building Maintenance etc. Assn.,* 41 Cal.2d 719 at p. 725 [264 P.2d 31].)

The trial court specifically found that the one per cent fee provided by the rules of the Marin Association was a reasonable fee for the services rendered; that the effect of this fee was to provide services which stabilized the industry and were reasonably adopted to lower the overall cost to its members and to produce lower bids for the ultimate purchasers of the goods and services; and that it was not established that the association fees are passed on to and borne by the customer.

Spencer further contends that the rules relating to the establishment of a bid depository and the bid fees are unlawful. As to this matter, the trial court found that the bid depository system created by the rules of the two associations serves a public interest as well as that of the individual members; that the bid depository system and the related rules promote and stabilize competitive bidding; and that in the absence of the same, the general contractor may benefit

by increased profit but such saving on his part would not necessarily be passed on to the owner.

On the basis of these findings, the trial court properly reasoned that although formerly, a contract having as its primary object the stifling of competition was illegal and contrary to public policy (see Rest., Contracts, § 517, subpar. a, illus. 6), as were trade association rules whereby the amount of dues of respective members varies according to the amount of business done by them, the modern view is to the contrary. Many of the authorities cited by Spencer were rejected in the leading case of *Electrical Contractors' Assn.* v. *A. S. Schulman Elec. Co.* (1944) 324 Ill.App. 28 [57 N.E.2d 220], affirmed 391 Ill. 333 [63 N.E.2d 392, 161 A.L.R. 787] (see cases collected in 161 A.L.R. 787).

A somewhat similar bid depository arrangement was approved in *Herriman* v. *Menzies,* 115 Cal. 16 [44 P. 660, 46 P. 730, 56 Am.St.Rep. 82, 35 L.R.A. 318]. *Boro Hall Corp.* v. *General Motors Corp.,* 130 F.2d 196 is also relevant. The most recent pertinent authority is *United States* v. *San Francisco Electrical Contractors Assn.* (D.C. N.D. Cal. 1944) 57 F.Supp. 57. In that case, the court concluded that a competitive bid depository agreement fixing a closing time for bids, freezing prices for 90 days after the bid closing and restricting the job to bidders who bid within the time fixed was held not to illegally restrain trade under the Sherman Antitrust Act, even when tied to a union contract under which the union withdrew labor from subcontractors not using the bid depository.

 In construing the Cartwright Act, it may be assumed that it is subject to an implied exception like the one which validates reasonable restraints of trade under the federal Sherman Antitrust Act. (*People* v. *Building Maintenance etc. Assn.,* 41 Cal.2d 719-727 [264 P.2d 31].) It has also been held that expenses incurred pursuant to an agreement which has the effect of stabilizing the construction industry are legitimate and legal. (*Bay Area Painters etc. Committee, Inc.* v. *Orack,* 102 Cal.App.2d 81 [226 P.2d 644].) Therefore, the trial court properly concluded that such restraints of trade as existed under the rules of the two associations were reasonable restraints of trade in the public interest and justified by the circumstances.

As to the damages sought by the plaintiffs, the trial court found that the remedies for breach of the rules were to be

found in article V of the Marin Association rules and article VI of the San Francisco Association rules. Thus, the court properly concluded that it was asked to award damages because plaintiffs, Currie Heating and Ongaro, upon securing the contract in question, agreed to indemnify the general contractor. The court then concluded that this voluntary act on the part of these plaintiffs could not give it jurisdiction over matters not in contemplation of the agreements between Spencer and the associations, and remanded plaintiffs to their remedies under the agreement.

Finally, we turn to Spencer's arguments relating to damages on its cross-complaint. Spencer first attacks the findings of the trial court that the plaintiffs were privileged to interfere with its business relationship with the general contractor, as it violated its obligations under the Marin and San Francisco Association rules. First, we think Spencer's commitment to bid through the depository was based on section 90 of the Restatement of Contracts which is law in this state. (*Drennan* v. *Star Paving Co.*, 51 Cal.2d 409 [333 P.2d 757].)

The trial court specifically found that the plaintiffs were entitled to interfere with Spencer's relations with the general contractor whether these relations were contractual or a mere expectancy of a prospective business relation. The court properly pointed out, too, that even if a contract between Spencer and Associated Construction was effected in form, it still might have been void because of Spencer's prior commitment to the Marin Association to comply with the bid depository rules. Furthermore, the demand and the furnishing of an indemnity agreement to the general contractor evidenced knowledge of a claim of Spencer to a contractual relation with the general contractor and this clearly demonstrates the moving inducement by the plaintiffs to the general contractor to terminate its relations with Spencer and thus resolves all questions of causation.

The above reasoning is based on section 767 of the Restatement of Torts, which lists several factors to be considered in determining whether an actor has a privilege to cause a third person not to perform a contract with another or enter into or continue a business relationship with another. This section has been cited with approval in this state. (*Masoni* v. *Board of Trade of San Francisco*, 119 Cal.App.2d 738 [260 P.2d 205]) and applied in numerous cases (*Imperial Ice Co.*

v. *Rossier*, 18 Cal.2d 33 [112 P.2d 631]; *Collins* v. *Vickter Manor, Inc.*, 47 Cal.2d 875 [306 P.2d 783]; see also the comment in 30 Cal.L.Rev. 181.)

Whether Spencer had a contract with Associated Construction or only a prospective agreement is not material. (*Zimmerman* v. *Bank of America*, 191 Cal.App.2d 55 [12 Cal. Rptr. 319].) The question is whether the plaintiffs' conduct was justified and the burden of proof is on the plaintiffs. We think the trial court properly concluded that the plaintiffs here met this burden.

Judgment denying relief on the complaint and the cross-complaint is hereby affirmed.

Shoemaker, J., and Agee, J., concurred.

A petition for a rehearing was denied February 28, 1963, and the petition of defendant and appellant for a hearing by the Supreme Court was denied April 3, 1963.