**Ronald Arthur LAKE, Sr., Plaintiff,**

v.

**MARTIN MARIETTA CORPORATION, etc., et al., Defendants.**

**No. 81–230–Orl–Civ–R.**

United States District Court,
M. D. Florida,
Orlando Division.

April 26, 1982.

Joseph I. Goldstein, Orlando, Fla., for plaintiff.

Thomas C. Garwood, Jr. of Akerman, Senterfitt & Eidson, Orlando, Fla., for defendant Martin Marietta.

Robert S. Giolito of Stanford, Fagan & Giolito, Atlanta, Ga., for defendant unions.

**726**

## MEMORANDUM OF DECISION

JOHN A. REED, Jr., District Judge.

This case came on for oral argument on motions for summary judgment filed by the defendant Martin Marietta Corporation on 12 January 1982, and by the defendant unions on 30 December 1981. The complaint alleges a claim against the defendants under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. The plaintiff claims that the defendant Martin Marietta violated a collective bargaining agreement by: (1) discharging him without cause and without a timely statement of the reasons for discharge, and (2) by failing to assign the plaintiff to work in March 1975 within his physical capabilities. (Complaint, ¶ 24). The plaintiff complains that the defendant unions violated the duty to fairly represent him by not timely and adequately processing his grievance arising from the alleged breaches. (Complaint, ¶¶ 22, 23). The relief sought includes reinstatement and back pay from 25 March 1975.

The issue raised by the motions for summary judgment is the identity of the appropriate statute of limitations to be applied to the claim against the defendant employer and the defendant unions. The facts pertinent to the motions are either alleged in the complaint or established by the plaintiff's deposition filed on 30 September 1981. From these two sources, the fact situation appears to be established without dispute. The defendant unions at all material times represented a collective bargaining unit containing certain employees of the defendant Martin Marietta one of whom was the plaintiff. (Complaint, ¶ 4, 5). During the time span covered by the complaint, two collective bargaining agreements were successively in effect (complaint, Exhibits A and B), but the pertinent provisions of each are identical. References, therefore, herein will be to the collective bargaining agreement attached to the complaint as Exhibit B.

The plaintiff was employed by the defendant Martin Marietta on or about 30 January 1961 as a maintenance painter and was continuously in that defendant's "employ in that classification until May 4, 1978, when plaintiff was unlawfully discharged by company". (Complaint, ¶ 4). On 28 March 1975, the plaintiff was told by his supervisor that unless he had a full release of restrictions placed on his work activities by reason of a prior injury, he could "no longer work for the company, and plaintiff was sent home, although plaintiff never requested a leave of absence, or to be relieved of his duties, and could in fact perform his duties". (Complaint, ¶ 8 through 12).

On 28 March 1975, the plaintiff orally requested "Robbie Robinson", the chairman of the union bargaining committee and a union steward to file a grievance on the plaintiff's behalf. Robinson agreed to do so. (Complaint, ¶ 13). No grievance was filed on the plaintiff's behalf until on or about 18 October 1979. That grievance was processed by the defendants through Step 4 of the grievance procedure. At that level it was denied by the defendant Martin Marietta on 21 November 1979 on the ground that the grievance was untimely. The grievance was not taken to arbitration. (Complaint, Exhibit E).

Under the collective bargaining agreement the employer may discharge or suspend employees for cause (Art. II); however, within forty-eight hours of a discharge or a suspension, the employer is obligated to mail a statement of the reasons for the discharge or suspension to the employee and the chairman of the bargaining committee. (Art. VIII, § 14). Under Section 2 of Article XVIII of the collective bargaining agreement an employee who sustains injury at work and is physically handicapped as a result, is to be given special consideration for employment in suitable jobs, providing such jobs are open and available. Section 5(a) of Article VIII of the collective bargaining agreement provides:

It is recognized that a grievance must be taken up promptly and shall in no event be taken up later than thirty (30) days after the Union or the employee

could reasonably have been expected to know of the occurrence or the condition which it is claimed gave rise to the grievance. A grievance for reclassification, the conditions of which are actually in existence at the time of the grievance, may be processed under this Article....

Section 2 of Article VIII provides in pertinent part:

... A decision rendered on a grievance in Step Four of said Grievance Procedure shall be final and binding upon all parties and the grievance deemed settled in accordance with such decision unless arbitrated pursuant to Article IX of this Agreement....

According to Mr. Lake's deposition, on 28 March 1975 he met with his supervisor, another management employee by the name of Don Shannahan, and Mr. Lake's union steward, Robbie Robinson. What happened at this meeting is described in the following excerpt from Mr. Lake's deposition:

.        .        .        .        .

Q  Who else was there?

A  Robbie, myself, Wayne Austin, Art Barlow, Jack Carroll and Don Shannahan.

Q  Who is Carroll?  Is he another supervisor?

A  He used to be chief at one time and he went up and down a little bit. Basically, Don Shannahan informed me that with all my restrictions, they could no longer use me at the Marin (sic) Company.

Q  What words did he use?  Tell me how he said it.

A  He said until you are 100 percent whole, he said—

Q  Mr. Lake, tell me—

MR. GOLDSTEIN: You asked him a question. Let him answer the question.

MR. GIOLITO: Sorry.

THE WITNESS: He said you can no longer work at the Martin Company until you are 100 percent hole (sic). (Page 72, lines 7 through 23).

.        .        .        .        .

Q  I understand.  Do you recall if you said anything to Robbie during the meeting?

A  Basically at the end, since Robbie was right there listening to everything—he heard everything—I asked Robbie to file a grievance for me.

Q  You heard Robbie this morning, didn't you, say that Mr. Lake turned to me and said well, what's the union going to do about this?  Is it possible you said that?

A  No, sir, I did not say that.

Q  You didn't say anything of the sort?

A  No, sir, I did not.  I asked Robbie to file a grievance for me.

Q  At the end of the meeting?

A  He said he would take care of it for me.

Q  He said he would take care of it?

A  Yes, sir.

Q  What happened next?

A  I asked Mr. Shannahan the reason why I was being sent home.  I said there are other workers on different jobs in the Maintenance Department with restriction and I feel I should have the same right to work on other jobs too like the other men.  I thought I was being discriminated against.  He wouldn't listen to me.  He wouldn't hear of it.

(Page 73, line 17 through page 74, line 14).

.        .        .        .        .

At the time of his separation from Martin Marietta in March 1975, Mr. Lake knew of the thirty-day time limit for the filing of grievances (deposition, page 88, line 1; page 92, line 19; page 97, lines 16 through page 98, line 25) and realized sometime in 1975 that no grievance had been filed by the defendant unions on his behalf (deposition, page 99, lines 17 through 20). The present action was filed on 4 May 1981, approximately six years after Mr. Lake's suspension in March of 1975 and approximately eighteen months after the 1979 grievance was rejected by the defendant employer in November 1979.

The statute of limitations issue now before the court was previously considered in connection with a motion to dismiss or alternatively for summary judgment filed by Martin Marietta on 29 May 1981. In ruling on that motion, this court failed to take into consideration the opinion of the United States Supreme Court published on 20 April 1981 in the case of *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). The *Mitchell* opinion requires a reconsideration of the issue. The *Mitchell* litigation originated with a Section 301 action against a union and an employer based upon an alleged unlawful discharge by the employer and a failure by the union to fairly represent the employee in the grievance growing out of the discharge. A summary judgment was granted by the district court in favor of the union and the employer. The court of appeals reversed. An application for certiorari was made only by the employer. The majority opinion, however, determined that the appropriate state statute of limitations to be applied to the claim against the employer as well as that against the union was the New York ninety-day statute of limitation applicable to actions to vacate arbitration awards. Florida has a similar ninety-day statute applicable to actions to vacate arbitration awards.

There is, however, a significant difference between the present action and the *Mitchell* case. In the present case, because of the unions' alleged default, the grievance procedure never addressed the merits of the plaintiff's grievance. Nevertheless, the *Mitchell* analysis of the Section 301 claim is still instructive and dictates the ultimate result reached by this court.

■ In *Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 704, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1966), the Court held that the timeliness of a Section 301 suit must be determined as a matter of federal law by reference to the appropriate state statute of limitations. In *Auto Workers v. Hoosier Corp.*, the Court eschewed the adoption of the six-month period of limitations under the Labor Management Relations Act of 1947 which would have resulted in a uniform limitation on a federal claim as to which uniformity and certainty should be the rule. Were this court to adopt that statute, it would simply be flying in the face of binding precedent. The *Mitchell* Court stated that selection of the appropriate state statute of limitations depends upon an examination of the nature of the federal claim and the federal policies involved. The Court indicated that to prevail against either the employer or the union, a claimant must not only show that his discharge was in violation of the collective bargaining contract, but also must carry the burden of demonstrating a breach of the duty of fair representation by the union. The Court stated:

. . . . .

We think that the unfair representation claim made by an employee against his union, even though his employer may ultimately be called upon to respond in damages for it if he is successful, is more a creation of "labor law" as it has developed since the enactment of § 301 than it is of general contract law. We said in *Hoosier Cardinal* that one of the leading federal policies in this area is the "relatively rapid disposition of labor disputes."

. . .

In a recent case from the Fifth Circuit Court of Appeals (Unit B), *Seymour v. Olin Corporation*, 666 F.2d 202, the appellate court concluded that an employee may recover not only past wages from his employer, but may also recover damages for a prospective wage loss in lieu of reinstatement. In *Seymour*, it was also held proper to apportion the award to tax the employer with the wage loss of the employee and the union only with attorneys' fees and court costs. On these authorities, the plaintiff's federal claim can reasonably be characterized as an action to remedy the effects of past wage losses and to prevent future wage losses resulting from the termination of the plaintiff's employment with the defendant Martin Marietta in March 1975. It follows that the appropriate Florida statute of limitations is the two-year statute of

limitations found in Fla.Stat. § 95.11(4)(c). That statute (which was in effect in 1975) provides:

Actions other than for recovery of real property shall be commenced as follows:

. . .

(4) Within two years—. . .

(c) An action to recover wages or overtime or damages or penalties concerning payment of wages and overtime.

The dissent by Justice Stevens in the *Mitchell* case suggests that a different statute of limitations should apply to the claim against the union than to the claim against the employer. He suggests that the claim against the union be viewed as a malpractice action and subject to the appropriate statute of limitations governing malpractice actions. The majority opinion gives no hint that a different statute of limitations should be applied to the claim against the union than to the claim against the employer. On the contrary, the discussion in the majority opinion reveals that the Section 301 claim against the employer is related to and dependent on the successful assertion of a claim against the union and the claim against the union is likewise dependent on the successful assertion of a claim against the employer. It is thus anomalous to apply a different statute of limitations to each defendant, and, on the authority of the majority opinion in *Mitchell*, this court declines to do so. In any event, in Florida a two-year statute of limitations likewise applies to professional malpractice of the type suggested by Justice Stevens in his dissent. See Fla.Stat. § 95.-11(4)(a).

■ By applying the two-year statute relating to wage claims, the federal policy favoring rapid disposition of labor disputes is adequately served along with the employee's interest in a reasonable period for judicial review. There remains the question of when that statute of limitations commenced to run on the claims of the plaintiff. It is obvious that the claim against the employer was complete at the latest forty-eight hours after Mr. Lake was allegedly suspended or discharged without cause. This would be 30 March 1975. The claim against the union was fully matured upon the termination of the thirty-day period for the filing of a grievance based on the allegedly unlawful discharge or suspension. From the testimony of Mr. Lake, it is apparent that he realized sometime in 1975 that the union had not timely filed the requested grievance on his behalf. For the foregoing reasons, the court concludes that the Florida two-year statute of limitations on wage claims commenced to run in 1975 after the discharge and bars the plaintiff's claims filed herein on 29 May 1981.

An alternate analysis of the statute of limitations question could reasonably be urged on the basis of the *Mitchell* opinion and the language of the collective bargaining agreement. As pointed out above, Section 2 of Article VIII of the collective bargaining agreement provides that a decision rendered on a grievance in Step 4 "... shall be final and binding upon all parties and the grievance deemed settled in accordance with such decision unless arbitrated...." Since the grievance was not taken to arbitration, it could be argued that the resolution of the grievance filed on 18 October 1979 was the functional equivalent for limitations purposes of a binding arbitration award. By so characterizing the resolution in Step 4, it would be consistent with the *Mitchell* rationale to apply as a bar the Florida ninety-day limitation period for filing actions to vacate arbitration awards. See Fla.Stat. § 682.13. This approach has not been adopted by this court because the employee's grievance was neither submitted to arbitration nor dealt with on its merits in the grievance process.

For the foregoing reasons, the motions for summary judgment will be granted.