UNITED PAPERWORKERS INTERNATIONAL, LOCAL # 395, and United Paperworkers International, Local # 766, Plaintiffs,

v.

ITT RAYONIER, INC., Defendant.

No. 89–534–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

June 7, 1990.

**834**

John F. MacLennan, Kattman, Eshelman & MacLennan, P.A., Jacksonville, Fla., for plaintiffs.

Guy O. Farmer, II, Kevin E. Hyde, Jacksonville, Fla., for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MELTON, District Judge.

This cause is before the Court on defendant's Motion for Summary Judgment, filed herein on August 11, 1989. Plaintiffs responded with a memorandum in opposition to the motion, filed herein on August 30, 1989. The Court permitted defendant the opportunity to argue further in a supplemental memorandum, filed herein on May 21, 1990. For the reasons stated herein, the motion will be denied.

Plaintiffs, United Paperworkers International, Local No. 766 and Local No. 395 (collectively "the Union"), initiated this action pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1988), for specific performance of an arbitration provision of a collective bargaining agreement. The parties agree that defendant ITT Rayonier Incorporated ("the Company") communicated its unequivocal notice of refusal to arbitrate the subject of this litigation on July 15, 1988. Further, the parties agree that the Company was served with the complaint in this matter on July 12, 1989.

The issue posed for resolution on the present motion for summary judgment is whether the action was filed and served within the time permitted by the applicable statute of limitation. The disagreement between the parties lies in the choice of the appropriate statute. The Company submits that this action is governed by the six-month statute of limitation of 29 U.S.C. § 160(b), section 10(b) of the National Labor Relations Act. If the Company is correct, the action is untimely.[1] The Union, however, proposes that this action is governed by the most analogous state statute of limitation, Fla.Stat. § 95.11(5)(a), which provides one year in which to bring an action for specific performance of a contract. The Court agrees with the Union's interpretation of the governing law and accordingly the action was timely filed and served.

The starting point for a legal analysis regarding the proper statute of limitation is the seminal case of *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In *DelCostello,* the Supreme Court decided that hybrid § 301/fair representation cases fell under the six-month statute of limitation of § 10(b) rather than state statutes of limitation. Because § 301 lacks its own statute of limitation, the Court considered the general rule that the most closely analogous state statute of limitation should apply. *DelCostello* carved out a narrow exception to the general rule.

---

1. The Company incorrectly asserts that the Union had to file and serve the complaint within six months after the unequivocal refusal to arbitrate. The cases relied upon by the Company predate *West v. Conrail,* 481 U.S. 35, 37–40, 107 S.Ct. 1538, 1541–42, 95 L.Ed.2d 32 (1987), where the Supreme Court held that the borrowing of the § 10(b) statute of limitation does not include the requirement of service within the limitations period. *See also American Postal Workers Union v. United States Postal Service,* 823 F.2d 466, 476 (11th Cir.1987). The Union filed the complaint more than six months after the critical date, however, so this error by the Company does not alter the issue to be decided.

[O]n the assumption that Congress would not choose "to adopt state [limitations] rules at odds with the purpose or operation of federal substantive law," we have recognized a closely circumscribed exception to the general rule that statutes of limitation are to be borrowed from state law. We decline to borrow a state statute of limitations only "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." This is a narrow exception to the general rule. As we made clear in *DelCostello,* "in labor law or elsewhere," application of a federal statute will be unusual, and "resort to state law remains the norm for borrowing of limitations periods."

*Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989) (quoting *DelCostello,* 462 U.S. at 161, 172, 171, 103 S.Ct. at 2289, 2294, 2293, respectively) (citations omitted).

■ After *DelCostello* and before *Reed,* the former case was described as establishing "a somewhat fluid balancing test for straightforward claims—one in which we are to adopt state limitations periods if they provide a direct analogy and arise out of similar policy considerations, but should adopt the section 10(b) period if state law does not afford sufficiently direct guidance." *Samples v. Ryder Truck Lines, Inc.,* 755 F.2d 881, 888 (11th Cir.1985). In the wake of the latter case, however, the balancing test should "take seriously [the Court's] admonition that analogous state statutes of limitations are to be used unless they frustrate or significantly interfere with federal policies." *Reed,* 109 S.Ct. at 627. Thus the balance initially tilts in favor of a state limitations period, if it provides a sound analogy, but the balance can be shifted by a demonstrable conflict between the state limitations period and the core federal interest of § 301.

■ Prior cases in the Eleventh Circuit Court of Appeals, arising from Alabama and Georgia, rejected state limitations periods for breach of contract claims and adopted the federal six-month statute of limitation. *See International Ass'n of Machinists & Aerospace Workers, Local Lodge 1688 v. Allied Products Corp.,* 786 F.2d 1561 (11th Cir.1986); *Samples, supra.* In the Georgia case, the appellate court canvassed the statute concerning enforcement of judicial determinations and the statute concerning actions to enforce contracts, finding "no reasonably applicable rule as to the proper time limitation for the union's action to enforce the arbitration," *Samples,* 755 F.2d at 888. The court's rationale embraces both the dissimilarity between the kinds of actions with which the state statutes are concerned and the six to seven year length of the limitations periods. The Alabama case, which, like this case, arose as an action to compel arbitration, repeats these points of emphasis. *See Allied Products,* 786 F.2d at 1564. In both cases, the court expressed special concern over the conflict between the length of time permitted by the state statutes of limitation—six years or more—and the federal policy relating to the prompt resolution of labor disputes.

Like Alabama and Georgia, Florida does not have a statute of limitation for an action to compel arbitration. Therefore, consistent with this precedent, the Court first analyzes the fitness of the analogy between an action for specific performance of a contract and an action to compel arbitration pursuant to a collective bargaining agreement. The Company argues that the analogy has been rejected in substance by the decision in *Allied Products* finding a dissimilarity between an action to redress breach of contract and an action to compel arbitration. The Court disagrees. The Alabama statute in *Allied Products* did not focus solely on actions for specific performance and this distinction is crucial.

An action to compel arbitration is an action for specific performance of the promise to arbitrate grievance disputes. The Union recognizes this basic tenet of labor law in the very terms used in the complaint. Its description, of course, is not

dispositive, but the foundation for its assertion lies in the case upon which all § 301 suits rest, *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). A pivotal issue in *Lincoln Mills* concerned the effect of the Norris–LaGuardia Act, whether it withdrew jurisdiction to compel arbitration of grievance disputes. The Court stated, "Though a literal reading might bring the dispute within the terms of the [Norris–LaGuardia] Act, we see no justification for restricting § 301(a) to damage suits, leaving *specific performance of a contract to arbitrate grievance disputes* to the inapposite procedural requirements of that Act." *Id.* at 458, 77 S.Ct. at 918 (citation and footnote omitted) (emphasis added). This language leaves no doubt as to the nature of the present suit. Lower courts deciding suits subsequent to *Lincoln Mills* have found no difficulty in concluding, "[i]t is settled that a federal court may order specific performance of provisions for arbitration contained in collective bargaining agreements." *Kentucky W. Va. Gas Co. v. Oil, Chem. & Atomic Workers Union Local No. 3–510*, 549 F.2d 407, 412 (6th Cir.1977); *see, e.g., Local No. 149, Am.Fed. of Tech. Eng'rs v. General Elec. Co.*, 250 F.2d 922, 929–30 (1st Cir.1957), *cert. denied*, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958); *Pock v. New York Typographical Union No. 6*, 223 F.Supp. 181, 184 (S.D.N.Y.1963); *Local Union No. 1055, IBEW v. Gulf Power Co.*, 175 F.Supp. 315, 317 (N.D.Fla.1959); *Butte Miners' Union No. 1 v. Anaconda Co.*, 159 F.Supp. 431, 433 (D.Mont.1958), *aff'd*, 267 F.2d 940 (9th Cir.1959); *Food Handlers Local 425, Amal. Meat Cutters v. Pluss Poultry, Inc.*, 158 F.Supp. 650, 657 (W.D. Ark.), *aff'd*, 260 F.2d 835 (8th Cir.1958).

This recognition of the close relation between actions for specific performance and actions to compel arbitration of grievance disputes places the first *DelCostello* issue squarely before the Court. Which provides the closer analogy to this kind of § 301 suit, the state statute of limitation or the federal statute? The obvious answer appears to be the state statute. Unlike previous cases that have rejected application of state statutes, this case involves a precise, tightly analogous Florida statute of limitation that describes the kind of cause of action advanced in this suit.

Section 10(b), by contrast, concerns unfair labor practices. Reflexive application of this statute to all suits to compel arbitration commits the error of ignoring the instruction in *DelCostello*, and emphasized in *Reed*, to resort to state law as the norm for borrowing of limitation periods. *See International Union of Elevator Constructors v. Home Elevator Co.*, 798 F.2d 222, 228 n. 6 (7th Cir.1986); *see also Posadas de Puerto Rico Assocs., Inc. v. Associacion de Empleados de Casio de Puerto Rico*, 873 F.2d 479, 484 (1st Cir.1989). Moreover,

> It is not at all clear that an action to compel arbitration is analogous to an unfair labor practice claim. It is an action to enforce a contract; the district court is not permitted to consider the merits of the underlying dispute—its only role is to decide whether the parties agreed to arbitrate the dispute.... [T]he *actual* dispute—whether the parties agreed to submit a particular issue to arbitration—has little in common with the typical unfair labor practice dispute.

*General Teamsters Union Local No. 174 v. Trick & Murray, Inc.*, 828 F.2d 1418, 1426 (9th Cir.1987) (Fletcher, J., dissenting).[2]

---

**2.** Judge Fletcher's dissent criticizes two cases, *Teamsters Local Union 315 v. Great Western Chemical Co.*, 781 F.2d 764 (9th Cir.1986), and *Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corp.*, 736 F.2d 896 (3d Cir.1984), in which the limitations period of § 10(b) was applied to suits to compel arbitration in lieu of state limitations periods.

Another faulty premise may be identified in the underlying rationale of these two cases. The Third Circuit reasoned (and the Ninth Circuit adopted by reference) that because the National Labor Relations Board has a policy of deferral to arbitration, "it makes a great deal of sense to have a common statute of limitations for unfair labor practice charges and for suits to compel arbitration." *Westinghouse Electric*, 736 F.2d at 902. However, the NLRB's deferral policy does not extend to instances in which arbitration is secured only by court order. *See National Rejectors Indus.*, 234 N.L.R.B. 251, 252 (1978); R. Gorman, Labor Law 751 (1976). Thus, there is no *a priori* reason to conform the statutes of limitation for the two kinds of suits.

It is significant that hybrid actions have a tripartite nature, involving employer, union, and disgruntled union member/employee. *DelCostello*, as explained in *Reed*, turned on the interjection of the third party into the dispute resolution process between the employer and the union.

The specific focus of our comparison between unfair labor practice charges governed by § 10(b) and hybrid § 301/fair representation claims was their effects upon the formation and operation of the collective-bargaining agreement between the employer and the bargaining representative, and upon the private settlement of disputes under that agreement through grievance-and-arbitration procedures. We noted that the § 10(b) period was " 'attuned to ... the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he viewed as an unjust settlement under the collective-bargaining system.' " Those same interests, we held, are implicated by hybrid § 301/fair representation claims against union and employer, because such claims constitute a direct challenge to private dispute-settlement under the collective-bargaining agreement.

*Reed*, 109 S.Ct. at 628 (citations and footnote omitted) (quoting *DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294, in turn quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 70, 101 S.Ct. 1559, 1567, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring in judgment)). A suit by the Union to compel arbitration with the Company does not implicate the same interests as unfair labor practice charges and hybrid suits; the action is not a challenge to the dispute resolution process, which is a consequence of the third-party union member/employee attacking a union-employer resolution of a grievance, but rather the present action is an attempt to enforce the private dispute resolution process.

The differences between an action to compel arbitration and an unfair labor practice charge distinguish the hybrid action considered in *DelCostello*. In an opinion that foreshadowed *DelCostello*, Justice Stewart advocated the application of the § 10(b) statute of limitation to hybrid claims on the ground that the contract claim against the employer based on § 301 was subordinate to the duty of fair representation claim, a claim bearing virtual identity with unfair labor practices. *See United Parcel Service v. Mitchell*, 451 U.S. 56, 66–68, 101 S.Ct. 1559, 1565–67, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring in judgment); *see also Reed*, 109 S.Ct. at 628 n. 4 (highlighting interdependency of claims); *DelCostello*, 462 U.S. at 163, 103 S.Ct. at 2290 (expressing agreement with Justice Stewart's separate opinion in *Mitchell*). It seems obvious, then, that the "family resemblance" between hybrid suits and unfair labor practice charges creates the appropriate analogy for application of § 10(b), *see DelCostello*, 462 U.S. at 169–70, 103 S.Ct. at 2293–94, but similar considerations are lacking when the comparison is between unfair labor practice charges and suits to compel arbitration.

The question, of course, is one of the *closer* analogy. *See Hechler v. IBEW*, 834 F.2d 942, 948 (11th Cir.1987). An action

---

Moreover, the rationale of the cases suggests some sort of "primary jurisdiction" rule for arbitration, which clearly is not the case. The NLRB defers to arbitration only when the voluntary dispute resolution process is underway at the time of the filing of a charge. *See United Technologies Corp.*, 268 NLRB 577, 560 n. 17 (1984). The facts of this case demonstrate this point; the NLRB investigated and resolved the Union's charge in December 1988, shortly before the date on which the Company claims the limitations period for this action ran.

The *Westinghouse Electric* rationale unravels completely on close examination of the interrelationship between the unfair labor practice charge and this action. While the parties agree that the unequivocal refusal to arbitrate, the act giving rise to a § 301 cause of action, took place in July 1988, the NLRB viewed the acts giving rise to the charge as occurring either in December 1987 or no later than early March 1988. *See* Decision of Regional Director, Case No. 12–CA–13165 (Dec. 29, 1988) (Exh. IG to defendant's Motion for Summary Judgment). The benefit of a common statute of limitation seems illusory if the events giving rise to the distinct causes of action are marked from different dates, as much as seven months apart, a period longer than the proposed limitations period.

for specific performance is plainly a closer analogy to an action to compel arbitration than is an unfair labor practice charge.[3] When the state statute of limitation is the closer analogy, it should be adopted unless a party demonstrates that its adoption will substantially undermine federal labor policy. *See Champion Int'l Corp. v. United Paperworkers Int'l Union,* 779 F.2d 328 (6th Cir.1985). The Company has provided no argument why the one-year statute of limitation interferes with federal labor policy or why the practicalities of this litigation make the federal limitations period significantly more appropriate. An examination of relevant cases suggests that a one-year statute of limitation poses no threat to the important federal policies at stake.

In *West v. Conrail,* 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987), the Supreme Court found that a period lasting as long as ten months between the accrual of a cause of action under § 301 and the service of the complaint created no offense to the concern expressed in *DelCostello* that labor disputes should reach rapid resolution. *See id.* at 39 n. 6, 107 S.Ct. at 1542 n. 6. (The potential for the ten month length of time arose from the Court's refusal to borrow the requirement of service within the § 10(b) statute of limitation as an incident to borrowing the six month limitations period of the statute.) Given the acceptance of this length of time, there is no reason to accept six months as an inspired limitations period, as some courts have, *see, e.g., Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington,* 820 F.2d 31, 37 (2d Cir.1987); rather, the Court should determine what "[d]ifferent degrees of dispatch are necessary or appropriate in different industrial relations contexts." *Home Elevator,* 798 F.2d at 228.

The Seventh Circuit Court of Appeals found no difficulty in adopting a two-year statute of limitation for an action to compel compliance with the terms and conditions of a collective bargaining agreement. *See id.* at 230. Additionally, this Court has applied a two-year statute of limitation to a suit to enforce a monetary obligation under a collective bargaining agreement, noting the consistency of the period with the federal policy favoring rapid disposition of labor disputes. *See Spencer v. Puerto Rico Marine Mgmt., Inc.,* 644 F.Supp. 172, 176 (M.D.Fla.1986) (quoting with approval from *Lake v. Martin Marietta Corp.,* 538 F.Supp. 725, 728–29 (M.D.Fla.1982)).

The foregoing cases are mentioned to demonstrate that the six month limitations period of § 10(b) is not the only limitations period consistent with federal labor policy. Indeed, were this the case, *DelCostello*

---

**3.** The Company's reply memorandum contains the suggestion that Florida law would find an action to compel arbitration untimely if filed nine months after the act giving rise to the cause of action. For the proposition the Company relies upon *Lyons v. Krathen,* 368 So.2d 906 (Fla.Dist.Ct.App.1979). This reliance is misplaced. As subsequently explained, *Lyons* is limited to cases in which the agreement to arbitrate sets a time limitation, *see, e.g., Rinker Portland Cement Corp. v. Seidel,* 414 So.2d 629, 630 (Fla.Dist.Ct.App.1982), and in which the parties acquiesced in the judicial determination of an issue that is properly committed to the arbitrator, *see, e.g., Public Health Trust v. M.R. Harrison Constr. Corp.,* 415 So.2d 756, 758 & n. 4 (Fla.Dist.Ct.App.1982). (Florida courts require a demand for arbitration under a commercial contract within a reasonable time, as measured by the applicable statutory period for the cause of action subject to arbitration. *See Kilbreath v. State Farm Mut. Auto. Ins. Co.,* 401 So.2d 846, 847 (Fla.Dist.Ct.App.1981); *Mendlein v. U.S. Fidelity & Guaranty Co.,* 277 So.2d 538, 539 (Fla.Dist.Ct.App.1973).)

Additionally, the limitations period for a commercial arbitration action is not necessarily the best analogy for § 301 suits because labor and commercial arbitration differ significantly. *See DelCostello,* 462 U.S. at 165–69, 103 S.Ct. at 2291–93; *Raytheon Co. v. Automated Business Sys., Inc.,* 882 F.2d 6, 10–11 (1st Cir.1989) (explaining differences). The Court's task is to characterize the nature of the claims at issue and thereafter focus on the period applicable to such a claim under the most analogous state law claim, *see Clark v. Coats & Clark, Inc.,* 865 F.2d 1237, 1241 (11th Cir.1989), as the Court has done. While the state law characterization of a federal claim does not control this determination, *Central States, Southeast & Southwest Areas Pension Fund v. Jordan,* 873 F.2d 149, 154 (7th Cir.1989), it is worthy of note that Florida courts view a close kinship between actions for specific performance and actions to compel arbitration, *see, e.g., Knight v. H.S. Equities, Inc.,* 280 So.2d 456, 459 (Fla.Dist.Ct.App.1973); *Keith v. State Farm Mut. Auto. Ins. Co.,* 240 So.2d 202 (Fla.Dist.Ct.App.1970).

would call for the use of shorter, but not longer, state statutes of limitation, which it does not. The sole cause for doubt, however, is the sheer number of courts that have adopted the statute of limitation from § 10(b) for actions to compel arbitration. The volume of precedent which appears to support the Company's view, though, involves Hobsonian choices: either (1) state statutes concerning breach of contract actions (a poor and remote analogy) that provide for four or more years in which to commence an action (an amount of time that plainly offends the federal policy favoring prompt resolution of labor disputes), *see, e.g., Aluminum, Brick & Glassworkers Int'l Union Local 674 v. A.P. Green Refractories, Inc.*, 895 F.2d 1053, 1054–55 (5th Cir.1990) (rejecting four-year residual limitations period in Texas); *Communications Workers v. Western Elec. Co.*, 860 F.2d 1137, 1140–45 (1st Cir.1988) (rejecting six-year statute of limitation in Massachusetts); *Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington*, 820 F.2d 31, 36–38 (2d Cir.1987) (rejecting six-year limitations period in New York); *McCreedy v. Local No. 971, UAW*, 809 F.2d 1232, 1237–39, *clarified & reh'g denied*, 818 F.2d 6 (6th Cir.1987) (rejecting six-year limitations period in Ohio); *Allied Products*, 786 F.2d at 1564 (rejecting six-year limitations period in Alabama); *Teamsters Union Local 315 v. Great Western Chemical Co.*, 781 F.2d 764, 766–67 (9th Cir.1986) (rejecting four-year limitations period in California); *Federation of Westinghouse Indep. Salaried Unions v. Westinghouse Elec. Corp.*, 736 F.2d 896, 901–02 (3d Cir.1984) (rejecting six-year limitations period in Pennsylvania); *UMW Dist. 31 v. Erwin Indus., Inc.*, 675 F.Supp. 1019, 1021 (N.D.W.Va.1987) (rejecting five-year limitations period in West Virginia); *United Steelworkers v. Fermet Reclamation, Ltd.*, 627 F.Supp. 1213, 1222 (N.D.Ill. 1986) (rejecting, prior to Seventh Circuit decision in *Home Elevator*, Illinois breach of contract statutes of limitations, which range from five to ten years); *but see Ozite Corp. v. Upholsters Int'l Union*, 671 F.Supp. 565, 567 (N.D.Ill.1987) (concluding that Illinois statute of limitation should apply, but action was timely even if § 10(b) limitations period used), or (2) state statutes concerning actions to vacate an arbitration award (also a poor analogy) that provide 100 days or less in which to institute suit (an amount of time too short to permit attempts to resolve disputes informally),[4] *see, e.g., Great Western*, 781 F.2d at 767–77 (rejecting California's 100–day statute of limitation); *Westinghouse Elec.*, 736 F.2d at 901–02 (rejecting Pennsylvania's 30–day limitations period); *Millmen's Union Local No. 1120 v. Pay Less Drug Stores Northwest, Inc.*, 589 F.Supp. 675, 677–78 (D.Or.1984) (rejecting Oregon's 20–day limitations period).

The Court has not located any opinion in which the proposed analogous state statute

---

**4.** The Company submits in its reply memorandum that the Florida statute of limitation for actions to vacate an arbitration award provides a better analogy than the specific performance limitations period. The statement in the text describing the disposition of such statutes by other courts fully describes the reason this Court rejects the Company's suggestion.

The Court observes with interest that neither the Federal Arbitration Act nor the Florida Arbitration Act (which follows the Uniform Arbitration Act on this subject) set a limitations period for actions to compel arbitration although actions to vacate, modify or confirm arbitration awards are so governed. Perhaps this is due to the manner in which a motion to compel arbitration usually arises in a commercial context, as a defense to a lawsuit that is susceptible to waiver by active participation in the suit. *See, e.g., Balboa Ins. Co. v. Mills*, 403 So.2d 1149, 1150 (Fla.Dist.Ct.App.1981). Setting aside this distinction, the absence of a limitations period may suggest that the best analogy in this instance calls for no predefined limitations period. *DelCostello* left this door open without further guidance. *See* 462 U.S. at 169 n. 20, 103 S.Ct. at 2293 n. 20. Because an action to compel arbitration of grievance disputes is in the nature of an equitable action, *see id.* at 168 n. 17, 103 S.Ct. at 2292 n. 17, it may be more appropriate to eschew limitations periods and simply turn the matter over to the arbitrator for application of equitable doctrines such as laches. *Cf. Holmberg v. Armbrecht*, 327 U.S. 392, 395–96, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946) (federal equitable actions should not borrow statutes of limitation but should be controlled by equitable doctrines). Given the widespread use of borrowing, however, the Court is hesitant to blaze a bold new trail when the same result may be obtained on a well-worn path.

is the Florida statute concerning actions for specific performance or a like statute. The analogy between an action for specific performance and an action to compel arbitration is obviously closer than the analogy between the latter and an action for breach of contract. The limitations period is much shorter than the choices faced by other courts, it extends the time for filing an action only incrementally, and it remains, by most standards, quite brief. The Court therefore is convinced that the large body of cases upon which the Company relies is distinguishable; further, the use of the one-year limitations period poses no conflict with the federal interests that influence the selection of an appropriate statute of limitation.

This last point merits explanation because the previously cited cases looked to the federal policies and the practicalities of litigation, as *DelCostello* instructs, and because an Eleventh Circuit opinion heavily promoted by the Company, *American Postal Workers Union v. United States Postal Service,* 823 F.2d 466 (11th Cir. 1987), makes several strong statements regarding the primacy of federal interests in non-hybrid § 301 actions. In particular, *Postal Workers* criticizes several cases that applied state statutes of limitation, in lieu of adopting a uniform federal limitations period, for non-hybrid actions because "those cases fail to account of the full impact of *DelCostello,* which was relatively recent when some of them were decided." *Id.* at 475.

*Reed* challenges the expansive view of the federal "practicality/policy" prong of *DelCostello* to which the Eleventh Circuit and other courts previously adhered, a fact recently recognized in this circuit. *See Pruitt v. Carpenters' Local Union No. 225,* 893 F.2d 1216, 1219–21 (11th Cir.1990). Indeed, in *Davis v. United Auto Workers,* 765 F.2d 1510, 1513–15 (11th Cir.1985), the Court of Appeals expressed its uneasiness in an expansive application of *DelCostello* but felt bound by the case to do so. The *Reed* Court noted *Davis* approvingly regarding the reservations expressed in the opinion while rejecting the holding of that

case. *See* 109 S.Ct. at 629; *Pruitt,* 893 F.2d at 1220 (explaining *Reed* ). The emphasis on national labor policy, then, exemplified by *Postal Workers,* results from a misreading of *DelCostello.* "*American Postal Workers* antedated *Reed,* and the Court's reiteration of the presumptive primacy of analogous state limitations periods seems to scuttle the idea of an esemplastic national rule." *Posadas de Puerto Rico Assocs.,* 873 F.2d at 484 (citation omitted).

In the wake of *Reed,* the Eleventh Circuit crafted guidance on resort to the " 'closely circumscribed' exception to [the] general rule," *Pruitt,* 893 F.2d at 1219 (quoting *Reed,* 109 S.Ct. at 625), favoring the borrowing of a limitations period from the most closely analogous state law cause of action. The "practicalities of litigation" aspect of *DelCostello* apparently applies only to statutes of limitation shorter than § 10(b), *see id.* at 1221, so the Court is unconcerned with this aspect. The national policy considerations extend to hybrid suits, attacks on the validity of a collective bargaining agreement, intermeddling with a settled arbitration award, and threats to stable bargaining relationships or to the integrity of the private dispute resolution process. *See id.* Of this list, the Court perceives that a suit seeking judicial enforcement of an arbitration clause implicates the national policy concerning threats to the integrity of the private dispute resolution process. *Accord Western Electric,* 860 F.2d at 1141; *Brick Mason Contractors,* 820 F.2d at 37; *Allied Products,* 786 F.2d at 1564 n. 5 (quoting *Great Western,* 781 F.2d at 766).

While the presence of a federal interest cannot be ignored, it also cannot serve as a substitute for analysis of the context in which the federal interest and the state statute supposedly conflict. As noted previously, the interest in enforcement of the arbitration process is qualitatively different from the interests at the heart of § 10(b). The Ninth Circuit has identified more specifically the interests involved in the determination of a statute of limitation for a suit

to compel arbitration.[5]

A long period of controversy and conflict can be a serious burden both for the grievant and for the management, and can poison the relationship between the contracting parties that the contract was designed to establish and preserve. All of these considerations point toward borrowing a statute of limitations that will prescribe a short period of time for invoking judicial help to compel arbitration.

*Great Western*, 781 F.2d at 766. This analysis, however, does not provide an explanation why one year would be too long while six months is appropriate. Indeed, the Ninth Circuit rejected 100 days as too short and four years as too long.

Florida made a deliberate choice, of recent vintage, *see* 1974 Fla. Laws ch. 74–382, § 7, to create a separate statute of limitation for actions for specific performance of a contract which is shorter in duration that the limitations period for contract actions in general. It is not unreasonable to suppose that, in light of *Lincoln Mills* and *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the drafters of the section anticipated that it might apply to the present situation. Regardless of any specific legislative intent regarding actions to compel arbitration, the Court finds a considered judgment on the part of Florida to draw a distinction for specific performance actions that forces prompt resolution of such controversies. This judgment, apparent from the face of the statute books, "adequately comports with the policies underlying federal labor law." *Hechler*, 834 F.2d at 947.

In conclusion, the "practicality/policy" prong of the *DelCostello* analysis yields a national policy consideration implicated by the Union's suit, but that consideration does not explain adequately why a uniform six-month limitations period serves federal labor policy better than Florida's limitations period for specific performance actions. In contrast, the first *DelCostello* prong, the "closer analogy" prong, strongly favors use of the state statute of limitation. In these circumstances, the Court concludes that the state statute is the appropriate statute to apply. *Cf. Pruitt*, 893 F.2d at 1221 (when federal limitations period fails one prong of *DelCostello* test, state statute should be applied); *Hechler*, 834 F.2d at 948–49 (state statute should be applied when "the direct analogy to state law outweighs any adverse effects upon the national interest in labor peace"). Accordingly, it is

ADJUDGED:

That defendant's Motion for Summary Judgment is hereby denied.

DONE AND ORDERED.

5. In *Brick Mason Contractors*, the Second Circuit expressed the interest slightly differently, as a matter of uncertainty about the status of the grievance prior to the filing of the petition to compel arbitration. *See* 820 F.2d at 37; *accord Green Refractories*, 895 F.2d at 1055; *Western Elec.*, 860 F.2d at 1143. While this accomplishes a distinction between actions to compel (for which uncertainty is a concern) and actions to enforce an arbitration award (for which no uncertainty apparently lies), it does not distinguish a limitations period of six months from one year. The qualitative difference in uncertainty created by the additional six months is unclear.

Ironically, *Westinghouse Electric*, the first and influential case on this subject, based its conclusion that industrial disputes would be stretched out too long by state statutes of limitations on the authority of then-recent cases. All the cases cited to by that court, however, considered actions to vacate arbitration awards, 736 F.2d at 901 n. 3, a situation which that court expressly distinguished from actions to compel arbitration, *see id.* at 901–02. In light of subsequent cases that have adopted limitations periods for actions to vacate that are much shorter than the six months allowed by § 10(b), *see, e.g., Posadas de Puerto Rico Assocs.*, 873 F.2d at 485–86 (30–day Puerto Rico statute); *Postal Workers*, 823 F.2d at 476–77 (90–day Federal Arbitration Act limitations period), a central tenet of *Westinghouse Electric* is open to question.