873 F.2d 149
 111 Lab.Cas. P 11,106
 CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,
a pension trust, and Howard McDougall, trustee and
fiduciary of such pension trust,
Plaintiffs-Appellants,
v.
Donald JORDAN, d/b/a Donald Jordan Truck Service, Defendant-Appellee.
 No. 88-1493.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 8, 1988.
Decided April 18, 1989.
 
 Thomas C. Nyhan, Chicago, Ill., for plaintiffs-appellants.
 Bruce Mitchell, Mitchell & Armstrong, Marion, Ill., for defendant-appellee.
 Before WOOD, Jr., COFFEY, and FLAUM, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Plaintiff-Appellant Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") is one of the largest multiemployer pension funds in the nation. Plaintiff-Appellant Howard McDougall serves as trustee of the Pension Fund and controls and manages its operation and administration. (Central States and Howard McDougall are hereinafter referred to collectively as "Pension Fund.") Pursuant to section 502(e)(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1132(e)(1), and section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. Sec. 185(a), the Pension Fund filed suit in federal district court against Donald Jordan, owner of an unincorporated business operating under the name of Donald Jordan Truck Service, claiming Jordan failed to make the proper contributions to the fund. The district court granted Jordan's motion for summary judgment. The Pension Fund appeals, claiming the district court improperly applied the Illinois statute of limitations governing oral contracts to this dispute.
 
 I. FACTUAL BACKGROUND
 
 2
 Appellant Central States, Southeast and Southwest Areas Pension Fund is a common law pension trust governed by section 302(c)(5) of the LMRA, 29 U.S.C. Sec. 186(c)(5), ERISA, 29 U.S.C. Secs. 1001-1461, and the Multiemployer Pension Plan Amendments Act of 1980, Pub.L. 96-364, 94 Stat. 1208. The Pension Fund operates as a trust for the purpose of providing pension benefits to employees providing work under collective bargaining agreements negotiated between employers and local unions affiliated with the International Brotherhood of Teamsters. The Pension Fund serves nearly 500,000 participants employed by approximately 13,000 employers pursuant to thousands of different collective bargaining agreements. See Central States Pension Fund v. Central Transport, Inc., 472 U.S. 559, 561-62, 105 S.Ct. 2833, 2835-36, 86 L.Ed.2d 447 (1985). Under these collective bargaining agreements, employers agree to make periodic contributions to the Pension Fund for each employee performing work covered by the agreements.
 
 
 3
 Appellee Jordan operates the Donald Jordan Truck Service in Tamms, Illinois. On March 25, 1966, Jordan executed a written Membership Agreement with a multiemployer association known as the Egyptian Truck Owners Association ("Employer Association"). In executing the Membership Agreement, Jordan granted the Employer Association "authority to negotiate all union contracts relative to the trucking business and further agree[d] to be fully bound by said contract[s]."
 
 
 4
 On September 1, 1967, the Employer Association executed a Participation Agreement with the Chauffeurs and Helpers Local Union No. 347 ("Local 347"). Under the Participation Agreement, the Employer Association agreed to be bound by the terms of the Trust Agreement governing the Pension Fund as well as all regulations adopted by the Trustees. The Participation Agreement also provided for weekly contributions to be made for each employee covered by the collective bargaining agreement. The Participation Agreement did not identify any of the Employer Association members by name. On the agreement form, the "Employer" was identified as the Egyptian Truck Owners Association. The Participation Agreement was not signed by Jordan or anyone else on behalf of Donald Jordan Truck Service.
 
 
 5
 Following the execution of the Participation Agreement, the Employer Association and Local 347 entered into a series of three-year collective bargaining agreements. These agreements, styled "Articles of Construction Agreements," were entered into between the Illinois Conference of Teamsters and the Associated General Contractors of Illinois, the Southern Illinois Builders Association, and the Central Illinois Builders. The first agreement ran from March 1, 1974 until April 30, 1977, and the second ran from May 1, 1977 until April 30, 1980. Article XI of the agreement dealt with pensions and required employers bound by the agreement's terms to make contributions to the Pension Fund at the specified rates on behalf of all covered employees. The collective bargaining agreements themselves were not signed by Jordan or anyone else on behalf of Donald Jordan Truck Service and the agreements do not indicate that Jordan was covered by them.
 
 
 6
 The Employer Association became involved by signing a series of amendments to these general agreements. These amendments indicated that the Employer Association and Local 347 were bound by the Articles of Construction Agreement.[1] On April 5, 1974, an addendum agreement was entered into between the Employer Association and Local 347 that modified portions of the Articles of Construction Agreement. Jordan did not sign this agreement. On April 1, 1977, another addendum agreement was entered into again modifying portions of the bargaining agreement. This agreement was signed by Jordan in his capacity as a member of the Employer Association negotiating committee. Nothing on the face of either addendum agreement indicates that Jordan or Donald Jordan Truck Service was a party to the agreements. Jordan did admit that during the 1975-1979 period, he was a member of the Employer Association and bound to the collective bargaining agreements in place during that time. Jordan's membership in the Employer Association terminated on December 31, 1979 and the entire association dissolved in 1980.
 
 
 7
 This dispute arose on October 9, 1984 when the Pension Fund filed an action seeking to collect delinquent contributions allegedly owed by Jordan on behalf of three employees. After filing the suit, the Pension Fund conducted two audits of Jordan's employee records. The Pension Fund claims these audits revealed that Jordan had not reported work history or remitted contributions on behalf of approximately thirty other employees during the 1975-1979 period. The Pension Fund then amended its original complaint to recover for these earlier delinquencies and, for reasons unrelated to this appeal, withdrew its claims for contributions arising after January 1, 1980.
 
 
 8
 On September 17, 1987, the district court granted Jordan's motion for summary judgment. The court found that the Illinois five-year statute of limitations for oral contracts barred the Pension Fund's efforts to enforce Jordan's obligations prior to October, 1979. The court stated that since the collective bargaining agreement was not signed by Jordan and did not specifically identify Jordan as a party, parol evidence would be required to establish that Jordan was a party to the agreement. Under a strict interpretation of Illinois law, the need for such extrinsic evidence to establish the identity of a party to a contract means that the contract must be characterized as oral for statute of limitations purposes. The Pension Fund appeals, arguing that the Illinois ten-year statute of limitations for written contracts should be applied.
 
 II. DISCUSSION
 
 9
 This court must review the district court's entry of summary judgment de novo. Summary judgment should be granted only when no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This standard closely resembles that used for entry of a directed verdict, Fed.R.Civ.P. 50(c), where the district court must direct a verdict if there can be only one reasonable decision made under the governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The district court found as a matter of law that the Pension Fund's claims were time barred. A ruling on the proper statute of limitation is a question to be reviewed de novo. Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, 1450, 827 F.2d 1324 (9th Cir.1987). We must review this holding and determine whether the district court properly applied Illinois law.
 
 
 10
 Neither ERISA nor the LMRA contains a statute of limitations that applies to suits by fund trustees to collect delinquent employer contributions. Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan, 713 F.2d 247, 250-51 (7th Cir.1983). In the absence of a governing federal provision, "the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 1941-42, 85 L.Ed.2d 254 (1985). When choosing which state limitation to apply, the court must first "characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle." Id. at 268, 105 S.Ct. at 1942. This determination is a matter of federal law, Jenkins, 713 F.2d at 250-51, and the court must look to the underlying federal claim and the federal policies involved, Jenkins, 713 F.2d at 251. Unless it is inconsistent with federal policy or federal law, a federal court will adopt the most analogous state limitation period. International Union of Elevator Constructors v. Home Elevator Co., 798 F.2d 222, 226-29 (7th Cir.1986).
 
 
 11
 Finding that the Supreme Court and this court had both endorsed using state statutes of limitation in LMRA and ERISA claims, International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW) v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); International Union of Elevator Constructors v. Home Elevator Co., 798 F.2d 222 (7th Cir.1986), the district court looked to Illinois law to fill the gaps in ERISA and LMRA. The court found that there are two different statutes of limitation that apply to contract actions under Illinois law: a five-year statute of limitation for unwritten contracts, Ill.Rev.Stat. ch. 110, p 13-205 (1984), and a ten-year limitation for written contracts, Ill.Rev.Stat. ch. 110, p 13-206 (1984). The district court found that in Illinois, a contract is not "written" for statute of limitations purposes unless, at a minimum, it completely identifies the parties to the contract. Pratl v. Hawthorn-Mellody Farms Dairy, Inc., 53 Ill.App.3d 344, 347, 11 Ill.Dec. 216, 219, 368 N.E.2d 767, 770 (1977). If a writing does not identify the parties, the court stated that it should be treated as a partly written and partly oral contract and for statute of limitations purposes, such a contract is an oral contract. Here the court noted that it would be necessary to produce parol evidence, such as the Employer Association membership list, to identify all the parties to the contract and the use of this extrinsic evidence meant the contract was not written. See Kordewick v. Indiana Harbor Belt R. Co., 157 F.2d 753, 754, cert. denied, 329 U.S. 806, 67 S.Ct. 502, 91 L.Ed. 688 (1946) (when parol evidence needed to show whether employees covered by bargaining agreement, contract not entirely in writing); Clark v. Western Union Tel. Co., 141 Ill.App.3d 174, 176, 95 Ill.Dec. 563, 564, 490 N.E.2d 36, 37 (1986) (extrinsic writings cannot be used to supplement written contract). The court refused to use this available extrinsic evidence and strictly interpreted Illinois law to make this an oral contract. The court claimed that this shorter statute of limitations comported with the policies behind ERISA and the LMRA--"federal labor law's goal of expeditious resolution of labor disputes." See also Hoosier Cardinal, 383 U.S. at 707, 86 S.Ct. at 1114. We must begin our review of the district court's decision by undertaking an independent examination of Illinois case law.
 
 
 12
 As the district court noted, there is ample Illinois law supporting the proposition that the collective bargaining agreement under review here should be classified as an oral contract. See, e.g., Jones v. United States, 424 F.Supp. 236, 238 (E.D.Ill.1976) (partly written and partly oral contract is treated as oral); Munsterman v. Illinois Agr. Auditing Ass'n, 106 Ill.App.3d 237, 62 Ill.Dec. 125, 435 N.E.2d 923 (1982) (third-party beneficiary of written agreement not entitled to use ten-year limitation); Pratl v. Hawthorn-Mellody Farms Dairy, Inc., 53 Ill.App.3d 344, 347, 11 Ill.Dec. 216, 368 N.E.2d 767, 770 (1977) (contract not written unless parties can be ascertained from instrument itself); Railway Passenger & Freight Conductors' Mut. Aid & Benefit Ass'n v. Loomis, 142 Ill. 560, 567, 32 N.E. 424 (1892) (same). However, there are other cases that cast some doubt on such a strict interpretation of what constitutes a written contract. In Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Fund, 713 F.2d 247 (7th Cir.1983), this court held that an ERISA action brought by an employee/beneficiary to enforce the terms of a trust agreement would be characterized as an action to enforce a written contract. Jenkins, 713 F.2d at 253. In attempting to determine what Illinois limitation was most appropriate for the ERISA claim, we noted that since the beneficiary was not actually identified in the trust agreement,
 
 
 13
 [t]he individual employment contracts of the defendant's former employers and the actual employment periods themselves will need to be introduced for the appellant to properly explain his work history and qualify as a covered employee beneficiary under the terms of the Plan. Nevertheless, the action is based on the written contract pension plan. As such, the most analogous Illinois Statute is Ill.Rev.Stat. ch. 110, p 13-206.
 
 
 14
 Jenkins, 713 F.2d at 253. Indeed, at least one district court has held that Jenkins mandates the application of the written contract statute of limitations in ERISA delinquency actions. Robbins v. Crouse Cartage Co., No. 84 C 1313, slip op. at 1 (N.D.Ill. May 15, 1986).
 
 
 15
 Other Illinois cases cast doubt on the district court's interpretation of Illinois law. In Electrical Contractors Ass'n v. A.S. Schulman Elec. Co., 391 Ill. 333, 63 N.E.2d 392 (1945), the Illinois court used the association's bylaws and records and a letter from the defendant to the plaintiff to establish a written contract for limitations purposes. "They were in writing and no verbal testimony being necessary to establish the contract, the five-year statute did not apply." Id. at 345, 63 N.E.2d at 397. See also Spoor v. Q & C Co., 162 F.2d 529, 534 (7th Cir.1947) (plaintiff's action is based on written documents and falls under limitation for contracts in writing); Jones v. Supreme Lodge Knights of Honor, 236 Ill. 113, 86 N.E. 191 (1908) (group of written documents together constituted written contract). These cases establish that extrinsic written evidence could be used to establish the identity of the parties without removing the contract from the ambit of the ten-year limitation.
 
 
 16
 Finally, the court in Jovan v. Starr, 87 Ill.App.2d 350, 231 N.E.2d 637 (1967), held that an agreement executed by an agent on behalf of an undisclosed principal is a "writing" for limitations purposes, even though the document did not name one of the parties. Jovan, 87 Ill.App.2d at 353-54, 231 N.E.2d at 639. In this case, the agreement was signed by an agent, the Employer Association, on behalf of an undisclosed principal, Jordan and all the other members, who empowered the agent to bind them to the agreement. Under Illinois law, the mere fact that it would be necessary to examine one extrinsic written document, the Employer Association membership list, does not mean this is an oral contract for limitations purposes and the district court was incorrect in that interpretation. For limitation purposes, it is reasonable to construe all the written documents together as constituting the contract. The parties intended it to work that way--they intended to be bound by the documents as a whole.
 
 
 17
 Even if Illinois law had been clear on this subject, the interpretations of the Illinois courts do not predetermine the actions of this court. In Hoosier Cardinal, the Supreme Court, while acknowledging the usefulness of characterizations imposed by state law, made it clear that the characterization of federal claims "for the purpose of selecting the appropriate state limitations provision is ultimately a question of federal law." Hoosier Cardinal, 383 U.S. at 706, 86 S.Ct. at 1113. We are called upon to characterize this action as either an action on an oral contract or on a written contract. We find the decisions made by the Illinois courts to be quite helpful in making this characterization. However, we are not bound by the letter of state limitation statutes. "Considerations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). State law does not control the characterization of a federal claim because state legislatures do not "devise their limitations statutes with national interests in mind." Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977).
 
 
 18
 By looking at those national interests, we conclude that this action should be characterized as a suit upon a written contract. The district court stated that its use of the shorter limitation period was in line with a national labor policy of quick resolution of disputes. The Eighth Circuit, in Robbins v. Iowa Rd. Builders Co., 828 F.2d 1348 (8th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 2899, 101 L.Ed.2d 933 (1988), made clear that such concerns are not important in ERISA claims. The Robbins court pointed out that in a true labor dispute, quick resolution is favored to avoid the possibility of strikes, lockouts, and other disruptions. Id. at 1355. Disputes over the administration of pension fund trusts involve few such risks. Id.
 
 
 19
 The overriding policy consideration in this case is the integrity of the Pension Fund and its ability to pay its beneficiaries. The Pension Fund must rely on self-reporting by employers. It may take time for the Pension Fund to discover irregularities in employer contributions. Characterizing this action as an action on a written contract contributes to the stability of pension funds and will encourage employers to meet their obligations.
 
 III. CONCLUSION
 
 20
 We view the district court's application of the Illinois five-year statute of limitations for oral contracts, although not without support, as incorrect in these circumstances. We hold that ERISA actions by fund trustees to collect delinquent employer contributions owed to a multiemployer benefit fund are actions to enforce written agreements for statute of limitations purposes. The entry of judgment by the district court is REVERSED and this case is REMANDED for further disposition in accordance with this opinion.
 
 
 
 [1]
 In the addendum agreements signed by the Employer Association and Local 347, the following language appears: "Whereas the Parties this date entered into an Agreement entitled 'ARTICLES OF CONSTRUCTION AGREEMENT.' ..."