UNION CARBIDE CORP., a New York Corporation; Agri Financial Services, Inc., an Iowa Corporation; Cargill, Inc., a Delaware Corporation; Celtran, Inc., a Delaware Corporation; Chrysler Rail Transportation Corp., a Delaware Corporation; GLNX Corp., a Texas Corporation; Mobil Oil Corp., a Delaware Corporation; Tennessee Eastman Co., a New Jersey Corporation; Vista Chemical Company, a Delaware Corporation; and Quantum Chemical Corporation, a Virginia Corporation, Plaintiffs–Appellants,

v.

STATE BOARD OF TAX COMMISSIONERS OF the STATE OF INDIANA, C. Kurt Zorn, Sandra K. Bickel, Gordon E. McIntyre, as members of the State Board of Tax Commissioners of the State of Indiana; Indiana Department of State Revenue, and Kenneth E. Miller, as Commissioner of the Indiana Department of State Revenue, Defendants–Appellees.

No. 92–3423.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 17, 1993.

Decided April 27, 1993.

John F. Prescott, Jr., Barton T. Sprunger, Ice, Miller, Donadio & Ryan, Indianapolis, IN, Terrence J. Benshoof (argued), Rodriguez & Villalobos, Chicago, IL, for plaintiffs-appellants.

Marilyn S. Meighen, Office of the Atty. Gen., Tax Div., Indianapolis, IN (argued), for defendants-appellees.

Before RIPPLE and MANION, Circuit Judges, and SHADUR, Senior District Judge.*

SHADUR, Senior District Judge.

Union Carbide Corp. and nine other owners of rail transportation property (collectively "Companies") appeal the district court's dismissal, as time-barred, of Companies' Complaint brought under Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the "4–R Act" or, when we refer to a specific provision of that statute as found in Title 49, simply "Act § —"), 49 U.S.C. § 11503 (1993).[1] Companies invoke that statutory provision to obtain declaratory and injunctive relief against allegedly discriminatory taxation of their rail cars by the State of Indiana.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We reverse the district court's order of dismissal and remand for further proceedings.

### Background

Companies furnish rail cars to common carriers for use in interstate commerce and thus qualify as "railroad car compan[ies]" under Ind.Code § 6–1.1–8–2(10).[2] On September 27, 1991 Indiana's State Board of Tax Commissioners ("Board") assessed an ad valorem property tax on Companies' indefinite-situs distributable property pursuant to Code § 6–1.1–8–12(b). Payment of the taxes was due on December 31, 1991 (Code § 6–1.1–8–35(b)).

Code § 6–1.1–8–30 allowed only 20 days for any taxpayer seeking state court review of an assessment to file an appeal to the Indiana Tax Court. Instead of pursuing that route, on December 26, 1991 Companies filed their Complaint in the United States District Court for the Southern District of Indiana seeking (1) a declaration that the tax sought to be imposed on their property was discriminatory and violative of the 4–R Act and (2) an injunction against collection of those assertedly discriminatory taxes. Board moved to dismiss the action as having been brought too late, contending that Indiana's 20–day statutory period for appeals of Board assessments also measured the outside time limit for suits under the 4–R Act.

Noting that the 4–R Act contained no statute of limitations of its own, the district court followed the teaching of *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985), which calls for adoption of a local limitations period "if it is not inconsistent with federal law or policy to do so." In doing so the district court analyzed the nature of Companies' claim as one challenging the methodology that had been used to allocate a portion of the value of Companies' railroad cars to Indiana. It observed that the issue was the same as that decided by Board (and that would have been raised on appeal to the Indiana Tax Court). Accordingly the district court applied a 20–day

---

* The Honorable Milton I. Shadur, of the Northern District of Illinois, is sitting by designation.

1. That provision was an amendment to the Interstate Commerce Act, 49 U.S.C. §§ 1 *et seq.*, and was originally codified at 49 U.S.C. § 26c. In the recodification accomplished by the Revised Interstate Commerce Act of 1978, Pub.L. 95–473, 92 Stat. 1337, 1445, the section was moved to its present location at 49 U.S.C. § 11503.

2. All further references to the Indiana statutes will take the form "Code § —."

limitation period and dismissed the action as untimely.[3]

Because the district court never reached the merits of Companies' claim, the only issue before us is whether a complaint for declaratory and injunctive relief under the 4–R Act is indeed subject to the same time constraints that apply to appeals of Board assessments in Indiana. Companies urge that the district court's adoption of that 20–day limitations period was inappropriate. They suggest instead that the equitable doctrine of laches should apply or, in the alternative, that Code § 6–1.1–26–1, which allows three years to file a claim for a refund of taxes wrongly collected, establishes a more closely analogous state statute of limitations. We review the district court's ruling as to the proper limitations period de novo (*Central States, Southeast & Southwest Areas Pension Fund v. Jordan*, 873 F.2d 149, 152 (7th Cir.1989)).

### *Purpose and Nature of the 4–R Act*

Congress' purpose in passing the 4–R Act was "to provide the means to rehabilitate and maintain the physical facilities, improve the operations and structure, and restore the financial stability of the railway system of the United States" (4–R Act § 101(a), 45 U.S.C. § 801(a)). One impediment to such financial stability was discriminatory taxation—the House Committee on Foreign and Interstate Commerce had found that railroads were "over-taxed by at least $50 million each year" (H.R.Rep. No. 725, 94th Cong., 1st Sess. 78 (1975)). In light of that finding the Committee went on to state (*id.*) that "[i]n view of the generally poor economic condition of the railroad industry and the effect such economic hardship is having on the ability of the industry to adequately serve our national rail transportation needs, the Committee believes discriminatory property and 'in lieu' taxation should be ended."

To relieve that burden of discriminatory state and local taxation (including the burden of having to pay those taxes first and then having to wait to recover the excessive amounts through suits for refund), Congress provided recourse to the federal courts via Act § 11503 (quoted in relevant part):

> (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
>
> > (1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
> >
> > (2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.
>
>     *     *     *     *     *     *
>
> (c) Notwithstanding section 1341 of title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section.

Thus Act § 11503(c) creates an express exception to the Tax Injunction Act, 28 U.S.C. § 1341, which provides that federal district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

Act § 11503(c) grants federal district courts concurrent jurisdiction to "prevent" violations of Act § 11503(b). Although the statute does not otherwise specify the type of

---

**3.** Although the district court labeled its dismissal as one "for lack of subject matter jurisdiction," that characterization was inaccurate. Act § 11503(c) expressly confers jurisdiction on the district courts, and it contains no express time limit as a condition of suit (a factor that might under some circumstances implicate the court's actual power to consider a lawsuit). Consequently the dismissal of the case on timeliness grounds clearly did not implicate any considerations of the absence of judicial power—the hallmark of any claimed lack of subject matter jurisdiction.

relief that a district court may grant, action taken by a court to "prevent" discriminatory taxation is by definition equitable in nature, in the form of injunctive, mandatory or declaratory relief (see *Burlington Northern R. Co. v. Bair*, 957 F.2d 599, 603 (8th Cir.1992), holding that the only form of relief available under Act § 11503(a) is equitable).[4]

### Limitations or Laches?

Federal courts have long followed a practice of borrowing local time constraints on bringing suit when dealing with federal causes of action for which Congress has provided no statute of limitations (*Reed v. United Transportation Union*, 488 U.S. 319, 323–24, 109 S.Ct. 621, 624–25, 102 L.Ed.2d 665 (1989)). That "implied absorption of State statutes of limitation within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of particular legal principles" (*Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946)). *Wilson*, 471 U.S. at 268, 105 S.Ct. at 1942, teaches that a court searching for an appropriate time limitation must "characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle." Federal interests remain paramount, however, and courts must "look to the underlying federal claim and the federal policies involved" (*Central States*, 873 F.2d at 152). Once having done so, "[u]nless it is inconsistent with federal policy or federal law, a federal court will adopt the most analogous state limitation period" (*id.*).

It follows that adoption of a state-prescribed time limit is not a universal rule that drives every type of lawsuit. Federal courts will not borrow state limitations periods if doing so would "frustrate or interfere with the implementation of national policies" or "be inconsistent with the underlying policies of the federal statute" (*Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977)). Thus, for example, *Reed*, 488 U.S. at 324, 109 S.Ct. at 625 spoke of "a closely circumscribed exception to the general rule" that courts should borrow time limitations from state law, stating that such borrowing was inappropriate (quoting *Del Costello v. International Bhd. of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983)):

> when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.[5]

Most significantly for present purposes, *Reed, id.* expressly identified as an exception to the *Wilson* approach the situation where

---

**4.** In the original enactment of the 4–R Act, its Section 306 (predecessor to the present Act § 11503) stated that a court may grant "mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent" any violations of the statute's provisions (Pub.L. No. 94–210, § 306, 90 Stat. 31, 54). Congress intended the Revised Interstate Commerce Act to restate without substantive change the laws that were replaced (Pub.L. No. 95–473, 92 Stat. 1337, codified at 49 U.S.C. §§ 10101 *et seq.*). Although many courts have noted that Act § 11503 did substantively change the original Section 306 in other aspects (see, e.g., *Ogilvie v. State Bd. of Equalization*, 657 F.2d 204, 206 n. 1 (8th Cir.1981) and other cases listed in Note, *Discriminatory Demands and Divided Decisions: State and Local Taxation of Rail, Motor, and Air Carrier Property*, 39 Vand. L.Rev. 1107, 1120–23 (1986)), others have expressly confirmed that Act § 11503(c) did not change the purely equitable nature of the relief available (see, e.g., *CSX Transportation, Inc. v.*

*Tennessee State Bd. of Equalization*, 964 F.2d 548, 550–57 (6th Cir.1992)). As the Report of the House Committee on the Judiciary explained, "the words 'such mandatory or prohibitive' and 'interim equitable relief' are omitted as unnecessary in view of the restatement" (H.R.Rep. No. 1395, 95th Cong., 2d Sess. 179 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3009, 3188).

**5.** Hence in some cases the Supreme Court has approved adoption of a federal statute of limitations (see, e.g., *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. —, —, 111 S.Ct. 2773, 2781, 115 L.Ed.2d 321 (1991); *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 153, 107 S.Ct. 2759, 2765, 97 L.Ed.2d 121 (1987); *Del Costello*, 462 U.S. at 169, 103 S.Ct. at 2293; *McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 225, 78 S.Ct. 1201, 1204, 2 L.Ed.2d 1272 (1958)). *Occidental Life* declined to apply any limitations period at all to enforcement actions brought by EEOC in Title VII cases.

the federally created rights at issue are solely equitable (citing *Holmberg*, 327 U.S. at 395–96, 66 S.Ct. at 584–85; see also *Russell v. Todd*, 309 U.S. 280, 287, 60 S.Ct. 527, 531, 84 L.Ed. 754 (1940)).

State statutes of limitations barring actions at law are inapplicable in cases "where the equity jurisdiction is exclusive and is not exercised in aid or support of a legal right" (*Russell*, 309 U.S. at 289, 60 S.Ct. at 532). Noting that "[t]he Rules of Decision Act does not apply to suits in equity," *Russell, id.* at 287, 60 S.Ct. at 531, stated:

> From the beginning, equity, in the absence of any statute of limitations made applicable to equity suits, has provided its own rule of limitations through the doctrine of laches, the principle that equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant.

And Justice Frankfurter, speaking for a unanimous Supreme Court, amplified upon the reasons for that approach in *Holmberg*, stating in part (327 U.S. at 395–96, 66 S.Ct. at 584–85 (citations omitted)):

> The present case concerns not only a federally-created right but a federal right for which the sole remedy is in equity. . . . We have the duty of federal courts, sitting as national courts throughout the country, to apply their own principles in enforcing an equitable right created by Congress. When Congress leaves to the federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights. Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief. Such statutes have been drawn upon by equity solely for the light they may shed in determining

that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair.

We too have followed that principle, stating that where "the only relief than *can* be sought is equitable, laches should apply" (*Cannon v. University of Health Sciences/Chicago Medical School*, 710 F.2d 351, 359 (7th Cir.1983)). We have confirmed the same doctrine in such cases as *Nemkov v. O'Hare Chicago Corp.*, 592 F.2d 351, 354 (7th Cir.1979),[6] *Baker v. F & F Inv.*, 420 F.2d 1191, 1193 (7th Cir.1970) and *Anderson v. United States Atomic Energy Comm'n*, 313 F.2d 313, 316 (7th Cir.1963).

We have already found that the plain and unequivocal reading of Act § 11503(c) is that the only relief it contemplates for a taxpayer challenging a discriminatory state tax is equitable in nature. That being so, the district court's application of the 20–day statute of limitations that controls appeals to the Indiana Tax Court was in error. Instead the doctrine of laches should determine the timeliness or untimeliness of the Complaint in this case.[7]

Under our two-pronged test for laches, a plaintiff must first explain its delay in bringing suit (*Zelazny v. Lyng*, 853 F.2d 540, 541 (7th Cir.1988)). If the delay is excusable, the action is timely. And even if no adequate excuse is offered for the delay, the action is still viable if the defendant does not then bear its burden of showing prejudice (*id.*). Statutes of limitations are helpful in the analysis to assist in determining "whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair" (*Holmberg*, 327 U.S. at 396, 66 S.Ct. at 584). As *Holmberg, id.* went on to quote

---

**6.** *Nemkov, id.* at 355 held that where a concurrent legal remedy does exist, a court sitting in equity will apply the state statute of limitations although the plaintiff has chosen to seek only equitable relief (see also *Russell*, 309 U.S. at 289, 60 S.Ct. at 532). Thus in *Nemkov* the plaintiffs had formed a class and sought relief as such in equity, even though each of them could have sued separately at law. By sharp contrast, in this case Act § 11503(c) provides only for equitable relief—the precise situation in which *Nemkov* (focusing on the relief contemplated by the stat-

ute) said that "laches rather than the statute of limitations applies."

**7.** Because laches and not limitations sets the standard, we need not address Companies' alternative argument that Indiana's three year statute of limitations, applicable to filing a claim for refund of taxes, is more closely analogous to suit under Act § 11503(c) than the 20–day limitation for appealing Board assessments.

from *Galliher v. Cadwell*, 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892):

> [L]aches is not like a limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties.

Here Board entered its assessment on September 27, 1991,[8] establishing a December 31 due date for payment of the tax. As we said at the outset, Companies' Complaint for injunctive and declaratory relief was filed in the Southern District of Indiana on December 26, 1991. Because the district court adhered to the extraordinarily short limitations route rather than examining the relevant equitable considerations, the record is inadequate to determine whether the lawsuit was timely either (1) because Companies could negate the existence of inexcusable delay or (2) because Board could not show how the State was prejudiced by the delay.[9] Thus a remand is necessary to consider whether laches does or does not provide a bar to the filing of the Complaint in this case.

### Conclusion

Because only equitable relief is available under Act § 11503(c), the doctrine of laches rather than any statute of limitations provides the appropriate standard for deciding on the timeliness of a complaint filed under that section. Accordingly, the district court's dismissal of Companies' Complaint is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

8. Board's assessment order, attached as Exhibit 1 to Defendant's Motion to Dismiss, is dated September 27, 1990. However, the affidavit of Wanda K. Watts, attached as Exhibit A to the Motion to Dismiss, notes that the 1990 date on the order was a clerical mistake.

9. All that Board's brief before us has said on the issue of prejudice (something that it treated as a side issue—understandably so, given the result below) is that the tax revenues from assessments on rail cars are not transferred to the State's general fund, but are rather disbursed to commuter rail services at the beginning of each calendar year. For that reason, Board says, "it is fiscally imperative that any disputed amount be quickly identified so that sound financial planning can be undertaken" (Board Br. 19). That was also the only argument advanced by Board's counsel at oral argument in response to our questioning on the subject of arguable prejudice. We express no view on the matter, which can be far better addressed by the district court on a full record.